## EDGAR MAGNUSON v. RUPP MANUFACTURING, INC.

171 N. W. (2d) 201.

October 3, 1969—No. 41610.

---

34

*P. M. Meehl* and *Irving J. Wiltrout*, for appellant.
*Prindle, Maland & Ward* and *W. D. Prindle*, for respondent.

NELSON, JUSTICE.

Appeal from an order of the district court which vacated a jury verdict for defendant and granted a new trial on all issues upon the exclusive ground that the court committed an error of law in not submitting to the jury an instruction on strict tort liability.

The action out of which the appeal arose was instituted for damages sustained by plaintiff, Edgar Magnuson, as a result of an accident on March 5, 1967. The accident occurred while plaintiff was operating a snowmobile manufactured by defendant, Rupp Manufacturing, Inc., a corporation located at Mansfield, Ohio. In his complaint, plaintiff alleged three counts of liability: (1) Negligence in the manufacture and design of the snowmobile; (2) breach of express and implied warranties; and (3) strict liability. The case was tried before a jury and was submitted on a general verdict. The theory submitted was negligent manufacture and design by defendant and proximate cause. Plaintiff made no request for an instruction on strict liability, and none was given.

The trial court's order granting plaintiff's motion for a new trial states in part:

"* * * It is the Court's recollection that on the morning that the case was to go to the jury instructions were discussed in chambers. The Court read to counsel what was proposed to be submitted to the jury as to the negligence of the manufacturer, contributory negligence, assumption of risk, and the Court's recollection is that counsel for plaintiff was asked specifically

whether the case was to be submitted on the question of negligence of the manufacturer and that counsel for plaintiff responded in the affirmative. However, the court reporter's notes do not show this. No requested instructions were submitted. At the conclusion of the charge to the jury the Court asked counsel whether they wished to call the Court's attention to any error or omission or inadvertent statement, and there was no response."

The trial court in its memorandum attached to the order points out that in McCormack v. Hankscraft Co. Inc. 278 Minn. 322, 154 N. W. (2d) 488, this court was fully mindful of the fact that plaintiff there did not directly plead the theory of strict tort liability, request the court to instruct on it, nor urge the theory until appeal. Nevertheless, this court discussed the theory, stating that it perceived no prejudice to defendant as its liability was adequately established on the ground of negligence.

Whether this case was decided on the theory of strict tort liability is unimportant, since the issues were, according to the pleadings and plaintiff's approach to the issues throughout the trial, fairly and adequately presented to the jury pursuant to the facts disclosed by the record. It is difficult to perceive how the exclusion of instructions on strict tort liability, under all the circumstances, has prejudiced plaintiff to the extent of denying him a fair trial.

The issue before this court is whether the trial court committed an error of law in not submitting to the jury an instruction on strict liability.

Plaintiff at the time of trial was 33 years of age, married, had four children, and resided in Granite Falls, Minnesota. He is employed as a mechanic, and his employment background is that of a mechanic. In December 1966 he and one Pat Oliger purchased a "Sno-Sport 300" snowmobile from Lyle Monson Motors, Inc., Granite Falls, Minnesota. This snowmobile was manufactured by defendant in such a manner that the motor was located under the hood in the front part of the snowmobile and

the cylinder or piston of the motor was positioned so that it was almost horizontal with the seat of the snowmobile. The spark plug of the motor was located at the top of the cylinder and faced towards the operator and is 6 to 8 inches above the seat. The spark plug extends three-fourths of an inch to one inch beyond the metal cowling or air shroud that surrounds the motor.

Plaintiff was well aware of the position of the spark plug. He had worked on the motor and removed the spark plug 5 to 10 times before the accident. He had also removed the pistons of the motor. Plaintiff identified the spark plug which was installed in the motor when it was received and this spark plug had a protective rubber insulator thereon. Plaintiff did not know if this type of protective insulator was present at the time of the accident. The evidence on that issue would indicate that it was not. Plaintiff had been hunting with the snowmobile 10 to 12 times before the accident occurred. During the course of his testimony the plaintiff identified other parts of the snowmobile which protruded toward the operator, particularly the choke button.

On March 5, 1967, plaintiff and some companions were fox hunting in the Murdock-Kerkhoven, Minnesota, area. Plaintiff was driving the snowmobile over a plowed field, which was covered with snow, at a speed of approximately 20 to 25 miles per hour. He was chasing a fox. He drove up a small knoll and then saw at ditch 10 to 12 feet deep in front of him. He went into the ditch with the snowmobile and the left ski of the machine caught in the snow, stopping the snowmobile abruptly. As it stopped, plaintiff flew off the left side of the snowmobile, striking his right knee against the spark plug and injuring himself. He was treated by Dr. Paul Schmidt in Granite Falls. Plaintiff still has the snowmobile and has raced it one time since the accident in the same condition as it was at the time of the accident. At the time of trial, he had built a guard for the spark plug.

Plaintiff's witness, David Conkey, a professional engineer, testified that the spark plug was not guarded and was unsafe. However, as the record shows, it had been guarded prior to the

accident, to the extent of having a protective insulator thereon. The spark plug was entirely visible, of course, because the original protective insulator, according to the record, was missing at the time of the accident.

During cross-examination Conkey agreed that *the degree of safety involved in the snowmobile was somewhat dependent upon the speed of the snowmobile.* He also agreed that *a highly important factor in so far as danger and safety are concerned is the operator.* As the testimony stands, this admission seriously weakens his testimony in view of the actual fact that the snowmobile went into a 10- or 12-foot-deep ditch before any injury occurred.

Defendant commenced manufacturing snowmobiles in 1965 and of seven models produced to date the only model with a horizontal positioned motor was the "Sno-Sport 300" manufactured in 1966. The purpose for the horizontal or nearly horizontal motor positioning, according to Thomas Earhart, defendant's director of engineering, is to keep the center of gravity low and also to give this machine a low profile.

Defendant contends that the evidence in the case did not justify an instruction on strict tort liability for the reason that strict liability is said to require evidence of a defective condition unreasonably dangerous to the user which causes injury to him. We agree that these elements were not present, and that the evidence without dispute shows that the spark plug in the snowmobile was visible and not in any way hidden and its position, condition, and construction were well known to plaintiff. The fact that plaintiff had removed the spark plug many times to clean it and to replace it does not enhance his contention that there should have been a strict liability instruction in the court's charge.

In McCormack v. Hankscraft Co. Inc. *supra,* this court declared its agreement with the principles underlying the rule of strict liability. However, it did not decide that case on the basis of strict tort liability but said it would follow its principles as

far as not requiring privity or reasonable notice of breach of warranty. In that case the court had not declared itself on the requirements of strict liability except where it may in the future determine that the facts and issues require it.

1-2. The strict liability doctrine is stated in Restatement, Torts (2d) § 402A, as follows:

"(1) One who sells any product in a defective condition unreasonably dangerous to the user or consumer or to his property is subject to liability for physical harm thereby caused to the ultimate user or consumer, or to his property, if

"(a) the seller is engaged in the business of selling such a product, and

"(b) it is expected to and does reach the user or consumer without substantial change in the condition in which it is sold.

"(2) The rule stated in Subsection (1) applies although

"(a) the seller has exercised all possible care in the preparation and sale of his product, and

"(b) the user or consumer has not bought the product from or entered into any contractual relation with the seller."

Since Henningsen v. Bloomfield Motors, Inc. 32 N. J. 358, 161 A. (2d) 69, 75 A. L. R. (2d) 1, and Greenman v. Yuba Power Products, Inc. 59 Cal. (2d) 57, 27 Cal. Rptr. 697, 377 P. (2d) 897, 13 A. L. R. (3d) 1049, there have been many decisions and articles written about this doctrine. Also of interest are the following comments in Restatement, Torts (2d) § 402A, which appear to be applicable:

"*g. Defective condition.* * * * The seller is not liable when he delivers the product in a safe condition, *and subsequent mishandling or other causes make it harmful by the time it is consumed. The burden of proof that the product was in a defective condition at the time that it left the hands of the particular seller is upon the injured plaintiff; and unless evidence can be pro-*

*duced which will support the conclusion that it was then defective, the burden is not sustained.*

\* \* \* \* \*

"*h. A product is not in a defective condition when it is safe for normal handling and consumption. If the injury results from abnormal handling* \* \* \* *or from abnormal preparation for use* \* \* \* *the seller is not liable.* \* \* \*

\* \* \* \* \*

"*i. Unreasonably dangerous.* The rule stated in this Section applies only where the defective condition of the product makes it unreasonably dangerous to the user or consumer. \* \* \* *The article sold must be dangerous to an extent beyond that which would be contemplated by the ordinary consumer who purchases it, with the ordinary knowledge common to the community as to its characteristics.* \* \* \*

\* \* \* \* \*

"*j. Directions or warning.* \* \* \*

"*Where warning is given, the seller may reasonably assume that it will be read and heeded; and a product bearing such a warning, which is safe for use if it is followed, is not in defective condition, nor is it unreasonably dangerous.*" (Italics supplied.)

In 1 Hursh, American Law of Products Liability, § 5A:4, it is stated:

"The chief elements which a plaintiff must prove in a case involving strict liability in tort are (1) *the defective and unreasonably dangerous condition of the defendant's product* (including defendant's connection with the product), and (2) *a causal connection between such condition and the plaintiff's injuries or damages.*" (Italics supplied.)

In summary, we find that under the strict liability doctrine plaintiff must prove (1) a defect; (2) causing unreasonable danger; (3) in existence at the time the product was in possession of the defendant to be charged; (4) causing injury; and (5)

*injury was not caused by any voluntary, unusual, or abnormal handling by the plaintiff.* Restatement, Torts (2d) § 402A, *comments, g, h,* and *i.*

As was pointed out in McCormack v. Hankscraft Co. Inc. *supra,* the rule of strict liability does not require plaintiff to prove negligence or that the injured party be in privity with the manufacturer. It is necessary under this rule to prove a defect in the product *before it left defendant's factory.*

In Swain v. Boeing Airplane Co. (2 Cir.) 337 F. (2d) 940, 942, it was held that—

"* * * even under the principle of strict liability the manufacturer is liable only if the plaintiff proves the accident was caused by delivery of the article in a 'defective condition,' which is to say not 'safe for normal handling and consumption.' "

However, in the matter of strict liability the term "defect" has been defined only on a case-by-case basis and has generally not been found susceptible of general definition. 1 Hursh, American Law of Products Liability, § 5A:6. The first question, therefore, must be whether the defendant's snowmobile was defective because part of the spark plug extended beyond the air shroud toward the operator.

In 2 Frumer & Friedman, Products Liability, § 16A[4] [e], it is stated that in strict liability it would appear that a product which causes damage under circumstances constituting a breach of warranty is "defective." If an article is defective, not reasonably fit for ordinary purposes for which it was sold or used, a defect arises out of the manufacture and if it proximately causes the injury, then liability exists. Santor v. A. & M. Karagheusian, Inc. 44 N. J. 52, 207 A. (2d) 305, 16 A. L. R. (3d) 670.

Clearly associated with the question of a defect is the "awareness" of it, if it is a defect. Some of the leading cases, although the courts did not base their decisions on the question of awareness, indicate that the *plaintiff must not be aware of the defect in order to recover.* In Greenman v. Yuba Power Products, Inc.

59 Cal. (2d) 64, 27 Cal. Rptr. 701, 377 P. (2d) 901, the court stated:

"* * * To establish the manufacturer's liability it was sufficient that plaintiff proved that he was injured while using the Shopsmith in a way it was intended to be used as a result of a defect in design and manufacture of which plaintiff *was not aware* that made the Shopsmith unsafe for its intended use." (Italics supplied.)

In Alvarez v. Felker Mfg. Co. 230 Cal. App. (2d) 987, 41 Cal. Rptr. 514, making reference to the Greenman case, the court said that a manufacturer is strictly liable in tort when an article he places on the market, knowing it is to be used without inspection for defects, proves to have a defect and causes injury. The court held that the plaintiff *was unaware* that the blade contained a defect which made it unsafe for its intended use.

Certainly the item claimed to have been defective in the instant case was an item of which plaintiff, who was a mechanic, was entirely aware from the time he started to operate the snowmobile and every time that he removed, cleaned, and repaired the spark plug, removing the protective insulator at the same time and possibly replacing it but admitting that he did not know whether such protective insulator was on or missing at the time he went into the ditch. (Evidence, such as the hole in plaintiff's trousers, tends to indicate that the insulator was missing at the time of the accident.) Therefore, in the instant case, because of the awareness of the position of the spark plug, based on the facts admitted, it could not be considered to be defective as far as plaintiff is concerned.

Defendant contends that the positioning of the spark plug on this snowmobile was not a defect and under all the evidence submitted in regard to the spark plug there was no question left for the jury to decide on that issue. The basis for this contention is that the plug was a condition just as the position of the choke button, air intake, or steering handlebars and was necessary for the operation of the machine.

In considering what constitutes an unreasonably dangerous condition, it has been suggested that—

"* * * the test for imposing strict liability can be phrased in terms of whether or not a product is unreasonably [sic] safe, and that the determination of this question involves the problem of balancing the utility of the risk against the magnitude of the risk. It is suggested that the factors involved in making this determination include, among others, the following: '(1) the usefulness and desirability of the product, (2) the availability of other and safer products to meet the same need, (3) the likelihood of injury and its probable seriousness, (4) the obviousness of the danger, (5) common knowledge and normal public expectation of the danger (particularly for established products), (6) the avoidability of injury by care in use of the product (including the effect of instructions or warnings), and (7) the ability to eliminate the danger without seriously impairing the usefulness of the product or making it unduly expensive.'" 1 Hursh, American Law of Products Liability, § 5A:8. See, Wade, *Strict Tort Liability of Manufacturers,* 19 S. W. L. J. 5.

Here again, as we see it, awareness by plaintiff becomes a factor. Plaintiff, in the instant case, was well aware of the spark plug and with the operation of the snowmobile. He knew the likelihood of injury and its probable seriousness. Defendant contends that it is not required to produce an accident-proof machine, and, if plaintiff uses the machine as he did, and certainly as he anticipated, even if there was a defect, it was not unreasonably dangerous. The awareness, which has been clearly established by plaintiff's testimony, not only negatives any claim of defect, but certainly takes this snowmobile out of the category of being unreasonably dangerous.

3. The effect of a change in a condition of a product is covered by Restatement, Torts (2d) § 402A, *comment g,* which indicates that for the doctrine to apply, *there must be no mishandling after manufacture.* Evidence in the instant case

established that at the delivery to plaintiff the spark plug had a protective shield covering it, plaintiff had changed and removed this many times, and at the time of the accident the same protective covering was not on the spark plug. *Therefore, the snowmobile as not in the same condition at the time of the accident as when delivered as far as the cover to the spark plug was concerned.*

4. According to 1 Hursh, American Law of Products Liability, § 5A:11, the defective condition must proximately cause the injury. Defendant contends that the injury was proximately caused by the act of the plaintiff in the operation of the snowmobile and not by any defect that is or was unreasonably dangerous. *It can also be argued that even though there was a defect, plaintiff's operation of the snowmobile was a superseding, intervening cause and the proximate cause of the injury. Here again the awareness is important.* Plaintiff being aware of the spark plug and claiming it to be defective and then doing what he did, it would appear that defendant would be insulated from responsibility because *the direct and proximate cause of the injury was plaintiff's operation of the snowmobile.*

5. Again referring to 1 Hursh, American Law of Products Liability, § 5A:12, comment is made upon what is termed voluntary, unusual, or abnormal handling. In People ex rel. General Motors Corp. v. Bua, 37 Ill. (2d) 180, 226 N. E. (2d) 6, it was held that the plaintiff must show that injury resulted from an unusually dangerous condition of the product. The Illinois court in applying the strict liability theory stated that the plaintiff has only to prove that his injury resulted from the condition of the product and that the condition was an unusually dangerous one and the condition existed at the time the product left the manufacturer's control. *But, in addition, the Illinois court indicated that it is still necessary to prove that the plaintiff was in the exercise of due care for his own safety.*

Prosser, *The Fall of the Citadel,* 50 Minn. L. Rev. 791, 824, comments on abnormal use as follows:

"There appears to be no reason to doubt that strict liability has made no change in the rule, well settled in the negligence cases, that the seller of the product is not to be held liable when the consumer makes an abnormal use of it. Sometimes this has been put on the ground that the manufacturer has assumed responsibility only for normal uses; sometimes it has gone off on 'proximate cause.' On either basis, directions and instructions for use which accompany the product take on a good deal of importance; and even where a direct warranty from the seller to his immediate buyer is in question, a violation of such instructions may make the use an abnormal one for which there is no liability. This has been carried over to the cases of strict liability without privity, as for example where a physician failed to follow the manufacturer's directions in administering a drug, or it was sold and used without a prescription. Even without such directions, the use may be clearly an abnormal one, as where an antiseptic deodorant is used as a mouthwash *or a plane is negligently flown,* or aspirin is taken in excessive quantities over a period of twenty-two years. *All such departures will defeat strict liability.*" (Italics supplied.)

As to proof, strict liability eliminates both privity and negligence, but it does not prove the plaintiff's case. He still has the burden of establishing that the particular defendant has sold a product which he should not have sold, and that it has caused his injury. This means that he must prove, first of all, not only that he has been injured, but that he has been injured by the product. The plaintiff must prove also that he was injured because the product was defective or otherwise unsafe for his use. Furthermore, the plaintiff must prove that the defect was in the product when it was sold by the particular defendant. The bare fact that an accident happens to a product, that an automobile goes into a ditch, is usually not sufficient proof that it was in any way defective. Even the fact that it is found afterward to be in a condition that could have been the cause is not enough, if it is no less likely that the condition was brought about by the accident it-

self. See, Prosser, *The Fall of the Citadel,* 50 Minn. L. Rev. 791, 840.

In this state it would appear that plaintiff, as part of his case, where the condition is obvious, must show that he made proper use of the product. Defendant agrees that the use of this snowmobile in hunting fox was not unusual, accidents can occur, but the doctrine plaintiff seeks to recover under is strict liability and *not absolute liability.* Plaintiff has the burden of proving proper use of the machine as part of his case, and, being aware of the condition and voluntarily doing what he did, he has not sustained this burden, and there was no question for the jury.

6. Keeton, *Products Liability,* 41 Tex. L. Rev. 855, 858, in discussing the problem, argues that strict liability is only applicable when the product leaves the manufacturer's hands in a defective condition. Liability on the basis of implied warranty or breach of a tort duty is not so strict or absolute as to justify recovery on the part of the user who merely shows that an injury was suffered in the course of the use. Regardless of how beneficial or desirable the product might be, and, even though no method is known to make it safer, injuries will occur, sometimes because of the misuse of it, and occasionally when used as intended. Everyone would recognize that a manufacturer is not responsible for any and every hurt that one suffers. Therefore, the courts which impose strict liability eliminating negligence must adopt some rules or principles as a substitute for negligence as a delimiting principle. What is the test of a defect? What is the scope of the manufacturer's duty or warranty? The answer depends to a certain extent upon the reason or policy for the imposition of liability. If the basis of responsibility is primarily the reliance on the manufacturer to put out a product in accordance with his express or tacit representation as to its nature, and, in accordance with the latest scientific knowledge and discoveries and by the exercise of reasonably developed skills, then perhaps the product is not regarded as defective if it is no different from what the consumer expected it to be.

The case upon which plaintiff mainly relies, McCormack v. Hankscraft Co. Inc. *supra,* does not lay down any rules with reference to the application of strict tort liability except to say that when the facts fit the strict liability theory, this court will henceforth recognize that theory and apply it.

In conclusion, we find that the court below was not compelled, on the record submitted, to include the strict liability theory in its charge. There was no clear warrant for such a charge under our decision in McCormack v. Hankscraft Co. Inc. *supra.*

Reversed and jury verdict ordered reinstated.

ROGOSHESKE, JUSTICE (concurring specially).

While I agree with the disposition reached, I fail to comprehend the basis thereof.

I believe it must be accepted, as defendant concedes, that plaintiff sufficiently pled strict liability. The third count of plaintiff's complaint alleged:

"That Defendant Rupp Manufacturing, Inc. manufactured, sold and through their representations induced Plaintiff to purchase a defective and dangerous machine; that Defendant is strictly liable for any and all injuries, loss and damages caused by said defective machine, including injuries to the Plaintiff as hereinbefore set forth.

"That by reason of said strict liability Defendant is responsible to Plaintiff for all injuries and damages resulting from said defective and dangerous machine.

"That as a direct and proximate result of the manufacture and sale of said defective and dangerous machine, Plaintiff suffered serious disfiguring, painful and permanent injuries * * *."

While this language might be improved, it contains all of the elements necessary to state a strict liability claim. See, Greeno v. Clark Equipment Co. (N. D. Ind.) 237 F. Supp. 427.

In order to establish a prima facie case of strict liability against a manufacturer, a plaintiff merely need introduce evidence showing (1) that the product he purchased was in a defec-

tive condition unreasonably dangerous for its use,[1] (2) that such defective condition existed when the product left the hands of the manufacturer,[2] and (3) that the defect was the proximate cause of the injury he suffered.[3] Where the evidence introduced would reasonably support a finding of these three elements, plaintiff is entitled to a jury instruction on strict liability.[4]

Here plaintiff introduced testimony to the effect that (1) the design of the snowmobile was defective and unreasonably dangerous because it provided for an unsafe, unguarded spark plug which protruded toward the rider;[5] (2) this defect existed when the snowmobile left the hands of the manufacturer; and (3) plaintiff's injuries resulted from coming into contact with the protruding spark plug as the snowmobile came to a sudden stop while he was operating it. Had plaintiff made clear to the trial court his theory of strict liability, before submission to the jury, this evidence standing alone would have been enough to require the court to submit the issue of strict liability. However, as the

---

[1] Ilnicki v. Montgomery Ward Co. (7 Cir.) 371 F. (2d) 195 (applying Indiana law); Suvada v. White Motor Co. 32 Ill. (2d) 612, 210 N. E. (2d) 182; Olney v. Beaman Bottling Co. 220 Tenn. 459, 418 S. W. (2d) 430; Restatement, Torts (2d) § 402A.

[2] Suvada v. White Motor Co. *supra*; Allen v. Coca-Cola Bottling Co. (Ky.) 403 S. W. (2d) 20; Shoshone Coca-Cola Bottling Co. v. Dolinski, 82 Nev. 439, 420 P. (2d) 855; Restatement, Torts (2d) § 402A.

[3] Royal v. Black & Decker Mfg. Co. (Fla. App.) 205 So. (2d) 307; Seely v. White Motor Co. 63 Cal. (2d) 9, 45 Cal. Rptr. 17, 403 P. (2d) 145; Restatement, Torts (2d) 402A.

[4] In Greenman v. Yuba Power Products, Inc. 59 Cal. (2d) 57, 27 Cal. Rptr. 697, 377 P. (2d) 897, 13 A. L. R. (3d) 1049, the court seemed also to require plaintiff to establish that he was using the product in the manner in which it was intended to be used. In this case, defendant's engineer testified that the snowmobile was designed to be used at high speeds over rough ground.

[5] A manufacturer's strict liability in tort may be based upon a defect in design as well as a defect in manufacture. Wright v. Massey-Harris, Inc. 68 Ill. App. (2d) 70, 215 N. E. (2d) 465; McCormack v. Hankscraft Co. Inc. 278 Minn. 322, 154 N. W. (2d) 488.

majority opinion emphasizes, strict liability is not absolute liability. Dippel v. Sciano, 37 Wis. (2d) 443, 155 N. W. (2d) 55. There are a number of defenses to a prima facie case of strict liability which are based upon the plaintiff's conduct. Dippel v. Sciano, *supra*. See, Greenman v. Yuba Power Products, Inc. 59 Cal. (2d) 57, 27 Cal. Rptr. 697, 377 P. (2d) 897, 13 A. L. R. (3d) 1049; Bushnell, *Illusory Defense of Contributory Negligence in Product Liability*, 12 Cleveland-Marshall L. Rev. 412; Keeton, *Assumption of Products Risks*, 19 S. W. L. J. 61; Prosser, *The Fall of the Citadel*, 50 Minn. L. Rev. 791, 824-826, 838-840.

Two such defenses to strict liability are assumption of risk and contributory negligence or contributory fault. If the plaintiff himself knew of the defect, realized the hazard it presented, yet voluntarily chose to use the product in such a manner that he encountered the hazard, he should not be permitted to recover. See, Dippel v. Sciano, *supra;* Bushnell, *Illusory Defense of Contributory Negligence in Product Liability,* 12 Cleveland-Marshall L. Rev. 412.

In this case, plaintiff was a trained mechanic who not only noticed that this spark plug protruded toward the rider, but also had done extensive repair and replacement work on it, removing the insulator which covered it. Thus, in my opinion, a reasonable mind functioning judicially would be compelled to conclude that plaintiff knew of the defect in design. Further, it is undisputed that plaintiff voluntarily chose to operate this defectively designed snowmobile at high speeds over unfamiliar terrain in pursuit of a fox. It must be conceded, however, that the record reveals insufficient evidence from which a trier of fact would be compelled to conclude that plaintiff subjectively realized the nature of the risk or danger. Thus, this is not a classic case of assumption of risk as a matter of law.[6]

---

[6] Assumption of risk in the classic sense does not involve a failure to use reasonable care. Instead, it is based on a subjective analysis and may be found whenever the plaintiff (1) had knowledge of the risk, (2) appreciated the risk, and (3) had a choice to avoid the risk and volun-

But, while contributory negligence in the sense of an unreasonable failure to notice or to take precautions against the possible existence of a defect is not a defense to strict liability,[7] it has been held that when a person is aware of the defect, and the hazard involved in using the product in a particular way would be obvious to a reasonable man, the plaintiff should not be able to recover on the theory of strict liability. See, Martinez v. Nichols Conveyor & Engineering Co. 243 Cal. App. (2d) 795, 52 Cal. Rptr. 842; Dippel v. Sciano, *supra*; Restatement, Torts, (2d) § 402A, *comment n.* Keeton, *Assumption of Products Risks,* 19 S. W. L. J. 61; Prosser, *The Assault Upon the Citadel (Strict Liability to the Consumer)*, 69 Yale L. J. 1099, 1147-48; Prosser, *The Fall of the Citadel,* 50 Minn. L. Rev. 791, 839; Annotation, 13 A. L. R. (3d) 1057, 1100-1103. It makes no difference whether this defense is called contributory negligence, assumption of risk, or contributory fault.

In this case it is undisputed that plaintiff was a trained, experienced mechanic. He had repaired and replaced the protruding spark plug which in essence was the basis upon which plaintiff's expert witness predicated his opinion that the design of the snowmobile was defective. In addition, plaintiff removed the protective insulator from the spark plug.[8] Under these circumstances, plaintiff voluntarily chose to operate the snowmobile

tarily chose to chance it. Parness v. Economic Laboratories, Inc. 284 Minn. 381, 170 N. W. (2d) 554; Knutson v. Arrigoni Bros. Co. 275 Minn. 408, 147 N. W. (2d) 561.

[7] Restatement, Torts (2d) § 402A, *comment n.* See, Prosser, *Assault Upon the Citadel (Strict Liability to the Consumer)*, 69 Yale L. J. 1099, 1147-48; Prosser, *The Fall of the Citadel,* 50 Minn. L. Rev. 791, 838.

[8] While in this case there was evidence to support a finding that the snowmobile was defective in design when it left the manufacturer before plaintiff removed the insulator, the utter failure of defendant to explain the purpose of the insulator justifiably could compel the conclusion, as the majority opinion points out, that plaintiff *substantially* changed the design of the snowmobile so that it was not in the same condition as when it left the manufacturer. In such a case, the manu-

at high speed over rough terrain in pursuit of a fox. I cannot escape the conclusion that a reasonable person of ordinary prudence who knew of the defect must be charged with knowledge of the danger of serious injury which would result from a sudden stop of the snowmobile. Accordingly, I am compelled to conclude that the risk was so obvious and that plaintiff's decision to encounter it was so unreasonable that he must be precluded as a matter of law from recovering on his strict liability claim. Although the trial court correctly concluded that the evidence established a prima facie case of strict liability, a denial of plaintiff's new trial motion was required because under the evidence a defense to plaintiff's recovering under the theory of strict liability was established as a matter of law.

OTIS, JUSTICE (concurring specially).
I concur in the opinion of Mr. Justice Rogosheske.

---

facturer cannot be held strictly liable in tort. Erickson v. Sears, Roebuck & Co. 240 Cal. App. (2d) 793, 50 Cal. Rptr. 143.