### GERALD WAITE v. AMERICAN CREOSOTE WORKS, INC.

204 N. W. 2d 410

February 2, 1973—Nos. 41540, 41541.

*Robb, Van Eps & Gilmore, Francis W. Van Eps,* and *Don J. Chantry,* for appellant.

*Hughes, Hughes & Thoreen* and *Fred J. Hughes,* for respondents.

Heard before Knutson, C. J., and Todd, MacLaughlin, and Schultz, JJ.

HAROLD W. SCHULTZ, JUSTICE.*

These were appeals from the judgment of the district court and from the order denying an alternative motion for judgment notwithstanding the verdict or for a new trial. The case involved a claim for personal injuries, and the jury answered special interrogatories finding against the defendant on the theory of strict liability. The court's findings adopted the jury's answers to the special interrogatories, and judgment was entered in favor of plaintiff in the amount of $200,000. This appeal followed.

The accident occurred on May 27, 1964, when the twenty-six-year-old plaintiff was employed as an apprentice lineman by Anoka Electrical Cooperative. He was disengaging wires from an old power pole when it broke, falling on him and causing severe personal injuries, including the loss of his left leg. The pole had been processed by defendant and had come into the possession of plaintiff's employer for use in supporting power wires. Plaintiff's employer was impleaded as a third-party defendant but at the end of the trial was, by action of the court, dismissed from the proceedings.

---

*Acting as Justice of the Supreme Court by appointment pursuant to Minn. Const. art. 6, § 2, and Minn. St. 2.724, subd. 2.

The case was submitted to the jury on two theories, (1) negligence, and (2) strict liability. The jury found no negligence on the part of defendant and no contributory negligence on the part of plaintiff. However, it did find liability on the part of defendant, founded on strict liability. The interrogatories which set out this issue were as follows:

"1. Did the defendant American Creosote Works, Inc. provide a pole in a defective condition unreasonably dangerous to the user Gerald Waite, and did it reach the user without substantial change in the condition in which it left the defendant[']s hands? Answer Yes or No.

"Answer: Yes.

"If your answer to number #1 is yes then

"2. Did Plaintiff's injuries directly result therefrom? Answer Yes or No.

"Answer: Yes."

Unfortunately, on the day the notice of appeal was served, the trial judge, The Honorable Norman H. Nelson, and his court reporter, Walter Grantham, were both killed in a tragic automobile accident. It was almost impossible to secure an accurate transcript. However, the parties did find a retired court reporter who was able to make a record of part of the trial, particularly the testimony of the expert witnesses. Counsel stipulated that this transcript, in addition to a copy of the trial judge's notes, would suffice as the record in this matter.

The trial court in a memorandum incorporated in its order denying motions of defendant for judgment notwithstanding the verdict or a new trial pointed out that this case was submitted to the jury pursuant to the theory of McCormack v. Hankscraft Co. Inc. 278 Minn. 322, 154 N. W. 2d 488 (1967), and Restatement, Torts 2d, § 402 A. Section 402 A, as adopted by this court in McCormack, sets out the doctrine of strict liability:

"(1) One who sells any product in a defective condition unreasonably dangerous to the user or consumer or to his property

is subject to liability for physical harm thereby caused to the ultimate user or consumer, or to his property, if

(a) the seller is engaged in the business of selling such a product, and

(b) it is expected to and does reach the user or consumer without substantial change in the condition in which it is sold."

Comment *g* to § 402 A states in part:

"The rule stated in this Section applies only where the product is, at the time it leaves the seller's hands, in a condition not contemplated by the ultimate consumer, which will be unreasonably dangerous to him. The seller is not liable when he delivers the product in a safe condition, and subsequent mishandling or other causes make it harmful by the time it is consumed. *The burden of proof that the product was in a defective condition at the time that it left the hands of the particular seller is upon the injured plaintiff; and unless evidence can be produced which will support the conclusion that it was then defective, the burden is not sustained.*" (Italics supplied.)

On review this court will consider the evidence in the light most favorable to the prevailing party and the verdict will not be disturbed if the evidence reasonably or fairly tends to sustain it. Delyea v. Goossen, 226 Minn. 91, 32 N. W. 2d 179 (1948). The question is whether on the record the jury could reasonably make the finding. See, Minneapolis Van & Whse. Co. v. St. Paul Terminal Whse. Co. 288 Minn. 294, 180 N. W. 2d 175 (1970).

In Magnuson v. Rupp Manufacturing, Inc. 285 Minn. 32, 171 N. W. 2d 201 (1969), this court set out a five-point test for determining strict liability. Plaintiff must prove, by a preponderance of the evidence, that there was (1) a defect (2) causing unreasonable danger (3) in existence at the time the product was in possession of the defendant to be charged (4) causing the injury, and (5) the injury was not caused by any voluntary, unusual, or abnormal handling by the plaintiff. In regard to causation, the Magnuson case made it clear that the defective condition must be the proximate cause of the plaintiff's injury.

The interrogatories submitted to the jury on the theory of strict liability were couched in the language of § 402 A of the Restatement. The court pointed out that there were no errors of law and that the essence of defendant's motion for judgment notwithstanding the verdict was the claimed insufficiency of the evidence. In that connection, the court found that there was no evidentiary dispute as to the following:

"1.   Defendant Company treated the pole in question.

"2.   Defendant put the pole in question in the stream of commerce.

"3.   The pole in question was 95 per cent rotted out at a point some 8 to 12 inches below the ground on the date of the accident.

"4.   The pole failed because it had so rotted out.

"5.   The plaintiff's injuries were the result of the failure of the pole."

Defendant questions whether the pole was unreasonably dangerous to the user at the time defendant placed it in the stream of commerce and whether the pole reached the ultimate user with a substantial change in the condition in which it left defendant's hands.

The pole was stamped in such a fashion that there was no doubt that it had been processed by defendant in 1946. It was put into use by plaintiff's employer in 1947. Approximately 3 years later, in 1950, the pole was relocated. The accident occurred in 1964. Considerable testimony was submitted through employees of defendant's company and by expert witnesses called by both parties. The trial court indicated that four expert witnesses testified in the trial.

The record indicates that the jury could find, as it did, that defendant provided a pole which was in an unreasonably dangerous condition at the time it left defendant's hands. The jury was entitled to find further that there was no evidence supporting the claim that there had been any substantial change in the pole. The experts seem to agree that the preservatives in the pole were

inadequate, and for that reason the pole decayed and rotted in a shorter period than could normally and reasonably be expected, causing plaintiff to fall and suffer the injuries in question.

The crux of defendant's argument is the total failure of the plaintiff's expert, Dr. John G. Haygreen, or any of the other experts who testified, to support plaintiff's claim that this pole performed to any degree in a way not anticipated and that, had this pole been treated differently, it would have had a longer life.

We believe the record clearly indicates that there is no basis for defendant's contentions. The record indicates that the pole in question was taken after the accident to the warehouse of plaintiff's employer, that wafers of the pole were cut out, and that they were subjected to examination by plaintiff's expert witness. That witness then testified that the treatment of the pole with preservatives did not meet industry standards, that the pole was defective, and that this was the reason for the failure of the pole. A careful examination of the record indicates that the jury decided this case on conflicting evidence after seeing and hearing the witnesses in favor of the plaintiff. The record amply supports its determination. The trial court correctly instructed the jury and asked for its answers to special interrogatories based on the theory of strict liability discussed by this court in McCormack v. Hankscraft Co. Inc., *supra,* and expressed in Restatement, Torts 2d, § 402 A.

Under all of the facts and circumstances, the verdict of the jury and the ruling of the trial court must be affirmed.

Affirmed.

MR. JUSTICE ROGOSHESKE took no part in the consideration or decision of this case.