INDEPENDENT SCHOOL DISTRICT NO. 181, BRAINERD,
v. THE CELOTEX CORPORATION AND OTHERS.

244 N. W. 2d 264.

July 9, 1976—No. 45655.

*Shanedling, Phillips, Gross & Aaron* and *Bert M. Gross,* for
appellant.

*Moore, Costello & Hart, Ronald E. Martell,* and *Fitzpatrick,
Larson & Fitzpatrick,* for respondent plaintiff.

*Meagher, Geer, Markham, Anderson, Adamson, Flaskamp & Brennan, O. C. Adamson II,* and *Thomas L. Adams,* for respondent Stegner, Hendrickson, McNutt & Sullivan.

*Carlsen, Greiner & Law* and *Peter F. Greiner,* for respondent Adolfson & Peterson, Inc.

*Ryan, Ryan, Ebert & Ruttger, Donald I. Ryan,* and *Thomas J. Ryan,* for respondent Thelen.

Heard before Sheran, C. J., and Kelly, Todd, and Breunig, JJ., and considered and decided by the court en banc.

ROBERT J. BREUNIG, JUSTICE.*

In March 1966, plaintiff, Independent School District No. 181, Brainerd, Minnesota (School District), retained defendants Stegner, Hendrickson, McNutt, and Sullivan (McNutt) as architects to prepare plans for a proposed new Brainerd High School. Construction began in July 1967. The general contractor for the project was defendant Adolfson & Peterson, Inc. (A & P), and the subcontractor for the roof work was defendant Thelen Heating and Roofing, Inc. (Thelen). The roof was completed in July 1968, using a Bond-Ply system manufactured and marketed by defendant The Celotex Corporation (Celotex).

The Bond-Ply system consisted of two plies of felt, saturated and coated with asphalt by the manufacturer and thereafter attached at the roofing site during installation by mopping with hot asphalt. Before introduction of this two-ply system, the standard system had generally consisted of a coated base sheet and either three or four additional plies of uncoated felt. The Bond-Ply roof was marketed as the equivalent of the standard four-ply roof, both being designed to last 20 years.

The Brainerd High School roof began leaking in February 1971. Upon the recommendation of a roofing consultant, school officials ultimately decided that it was necessary to re-roof the

---

*Acting as Justice of the Supreme Court by appointment pursuant to Minn. Const. art. 6, § 2, and Minn. St. 2.724, subd. 2.

entire school. The re-roofing project was completed in April 1974 at a cost of $210,927.23.

The School District, alleging fraud, breach of warranty, and negligence, brought this action to recover the cost of the re-roofing project. The parties agreed toward the end of the trial that the case would be submitted to the jury on a theory of negligence alone.[1] It was further agreed that the School District was entitled to a directed verdict to the effect that it had sustained damage as a direct result of the negligence of one or more of the defendants. Therefore, the jury was required to determine only the amount of the damages and which defendant(s) had been the direct cause.

The principal issue tried was whether the roof failed solely because of inherent latent defects in the Bond-Ply materials manufactured by Celotex or, in addition, because of negligent installation by Thelen. The trial court decided as a matter of law and so instructed the jury that the general contractor, A & P, committed no independent negligent acts or omissions and could be liable only vicariously for its subcontractor. Similarly, the jury was instructed that the architect, McNutt, was not liable except to the extent that their negligent inspection of Thelen's installation may have been a contributing cause of the damage. If Thelen's installation was not negligent, inspection by McNutt would be of no consequence. Therefore, without a verdict against Thelen, there could be no verdict against A & P or McNutt.

One of the causes of the roof failure was blistering from moisture in the plies. The origin of this moisture is the single relevant factual determination in assigning liability between Celotex and Thelen. Was this moisture introduced by Celotex during the manufacturing process or brought about by improper application of asphalt between the Bond-Ply sheets by Thelen during installation? There was evidence that Celotex used water

---

[1] The jury was instructed that the Seaboard Surety Company, which furnished a performance bond to A & P, could be disregarded as a defendant.

in the manufacturing process to lubricate rollers over which the Bond-Ply passed and that moisture was present in at least some Bond-Ply shipments until Celotex changed its manufacturing process in 1971. Whether moisture was present in Bond-Ply shipped to Thelen for installation on the Brainerd High School roof could only be inferred from evidence that the problem had been detected elsewhere. Thus, to rebut this inference, Celotex attempted to show that the moisture was attributable to negligent installation by Thelen. The testimony on Thelen's workmanship varied from "careless and improper" to "an excellent overall application of the roof system."

The jury returned a verdict for $150,000 against Celotex alone and exonerated Thelen, A & P, and McNutt. On appeal, Celotex argues that this verdict was the result of prejudicial errors at trial. We affirm.[2]

The principal issue argued by Celotex is that the trial court erred by receiving in evidence a list of complaints recorded by Celotex concerning moisture in Bond-Ply materials shipped to roofing installers in various locations throughout the country. These complaints were received by Celotex after completion of the Brainerd High School roof. Evidence of "similar happenings" is relevant even if they occur after the injury or loss. McCormick, Evidence (2 ed.) § 200. However, there was no evidence that any of these complaints had been investigated or verified by Celotex. Evidence of mere complaints lacks probative value. Therefore, the exhibit was relevant only if offered to prove that the complaints were valid. For this purpose, the exhibit was hearsay because the complainants, upon whose credibility the validity of these complaints depended, were not available for cross-

---

[2] The School District moved for summary dismissal of the appeal pursuant to Rule 133.01, Rules of Civil Appellate Procedure. While that disposition would not have been inappropriate, we have decided that the appeal should be disposed of by an opinion. Accordingly, the motion is denied.

examination. The trial court received the exhibit under the business records exception to the hearsay rule.

Under the common-law business records exception, either the records must be based on the personal knowledge of the entrant or the information must have been transmitted to the entrant by another informant pursuant to a business duty. City of Fairmont v. Sjostrom, 280 Minn. 87, 93, 157 N. W. 2d 849, 853 (1968). The Uniform Business Records as Evidence Act, Minn. St. 600.01 to 600.04, does not explicitly include the business duty test. Section 600.02 provides:

"A record of an act, condition, or event shall, in so far as relevant, be competent evidence if the custodian or other qualified witness testifies to its identity and the mode of its preparation, and if it was made in the regular course of business, at or near the time of the act, condition, or event, *and if, in the opinion of the court, the sources of information, method, and time of preparation were such as to justify its admission.*" (Italics supplied.)

Whether the statute should be construed to incorporate the common-law business duty test as suggested in McCormick, Evidence (2 ed.) § 310, p. 726, or the discretion of the trial court should be deemed to have been enlarged by the statute to permit admission of evidence on grounds of reliability other than business duty, we need not decide here.

Under either the common law or the statute, the business records exception often presents a double hearsay problem. In such instances, even if the record is made in the ordinary course of business so as to justify its admission without calling the entrant as a witness, there must be an independent basis for concluding that the information transmitted to the entrant is reliable. Celotex argues that there is no independent basis for concluding that the complaints were valid. Yet we do not find it necessary in this case to decide whether such an independent basis exists. If it was error to receive the list of complaints, that error was harmless. The evidence was cumulative because Celotex admitted a

moisture problem in its manufacturing process in intercompany memoranda and trade journal articles which were received in evidence without objection.

Celotex raises four other issues. (1) Early in the trial, during discussions among court and counsel regarding admissibility of evidence, the court commented that certain evidence could be "devastating" to Celotex. Although this comment was made out of the presence of the jury, it was overheard by a newspaper reporter and printed in a local paper. A cautionary instruction was given to the jury as soon as possible, but Celotex argues that the comment was still prejudicial. (2) At the end of the trial, the trial court instructed the jury that Celotex had a duty to warn Thelen of defects in Bond-Ply if Celotex knew of such defects. Celotex requested an additional instruction to the effect that no duty existed if Thelen was aware of the defects. This requested instruction was denied as argumentative. Celotex now argues that the trial court's instruction did not adequately state the law. (3) Celotex argues that the trial court erred in permitting the jury to consider an exhibit which suggested (a) that Celotex undertook to assume liability even if roof failure was caused by improper installation, and (b) that Celotex was financially able to assume such liability. (4) Finally, Celotex argues that the trial court erred in directing a verdict in favor of McNutt on the questions of negligence in (a) specification of Bond-Ply without independent testing of the product and (b) roof design.

We have carefully reviewed the record and conclude that none of the issues raised by Celotex would justify a new trial.

Affirmed.