Donald M. HOGAN, individually and as Guardian Ad Litem of Michael Hogan, a minor, Plaintiff and Appellant,

v.

Walter KNOOP and Walter Knoop, Jr., Defendants and Respondents.

Civ. No. 8733.

Supreme Court of North Dakota.

Oct. 22, 1971.

Degnan, McElroy, Lamb & Camrud, Grand Forks, for appellant.

O'Grady, Edwards, Anderson & Lawrence, Grand Forks, for respondents.

ERICKSTAD, Judge.

Before we may consider the merits of the appeal, we must consider the motion made by the respondents, Walter Knoop and Walter Knoop Jr., made in this court for a dismissal of the appeal by Donald M. Hogan individually and as guardian ad litem of Michael Hogan, a minor.

The notice of appeal from the August 22, 1967, judgment and the notice of deposit for undertaking, both dated February 20, 1968, were served upon the Knoops by mail, the affidavit of mailing indicating that the same were placed in an envelope addressed to the defendants' attorneys on February 20, 1968.

At the time of the filing of the notice of motion to dismiss the appeal in this court on July 16, 1971, the appellant had not filed a transcript of the case, nor a certificate settling the statement of the case, nor his briefs, nor had he caused a transmittal of the record to the Supreme Court.

On August 18, 1971, the judgment roll in the matter was filed with the Supreme Court, and on August 23, 1971, the transcripts and the appellant's brief were filed with the Supreme Court. The certificate settling the statement of the case, signed by the trial court on December 22, 1970, was filed with the clerk of the Supreme Court on August 23, 1971.

The certificate of the clerk of the district court of Grand Forks County discloses that the stipulation for the settlement of the statement of the case as well as the certificate settling the statement of the case were filed in that clerk's office on August 20, 1971. The stipulation settling the statement of the case is dated December 9, 1970.

Section 28–18–06, N.D.C.C., places the responsibility upon the appellant in a civil case to secure a transcript of the evidence "Within thirty days of the notice of the entry of judgment * * * or within such further time as the court shall allow * * *". In the instant case, the appellant not only failed to secure the transcript within the thirty days, a common failing, but he also failed to secure an extension of time from the court within which to secure the transcript and a settled statement of the case. Inasmuch as the respondents stipulated the settling of the case as of December 9, 1970, it would appear that the respondents

in so doing have waived any objection to the delay relative to securing a settlement of the case to that point in time and for a reasonable period thereafter.

We note, however, that the trial court settled the statement of the case as of December 22, 1970, and that thereafter the appellant failed to secure a transmittal of the record until August 18, the certificate settling the statement of the case and the stipulation settling the statement of the case until August 23, and the briefs until August 28, 1971.

Rule 21, relating to perfection of appeal and transmission of record; Rule 22, relating to settlement of the case; Rule 24, relating to the time for preparation and service of transcript in civil cases; Rule 26, relating to the preparation and transmission of the record in civil cases as governed by Section 28–27–06, N.D.C.C.; and Rule 31, providing for dismissal of an appeal for failure to comply with the rules, are all pertinent to the motion under consideration. We have very recently concluded that whether we grant a motion of this type is within the discretion of this court. See Application of United States Crude Oil Purchasing Company, 167 N.W. 2d 537 (N.D.1969).

Although we are displeased with the appellant's conduct in failing to comply with the rules of our court and the statutes of this State relative to appeal, we shall deny the motion and consider the merits, because we favor determining appeals upon the merits of the appeals, and because the entire record is now before us and properly settled by the trial court, and because the briefs have been properly served and filed and the matter is ready for a consideration upon the merits, which facts distinguish this case from Pierce County Abstract Company v. Petterson, 142 N.W.2d 620 (N.D.1966), wherein this court dismissed the appeal upon a motion grounded upon undue delay. In *Pierce County*, the transcript had been transmitted to the Supreme Court, but the statement of the case had not been settled and appellant had not served or filed her briefs by the date of the oral argument on the motion in this court.

In conclusion, because determination of an appeal upon the merits is favored—and because this court has the complete discretion under its rules to determine motions for dismissal of appeals based upon undue delay, and since the delay has not resulted in inconvenience, detriment or prejudice to the respondents, and since the record is now before us and the briefs have been served and filed—we shall deny the motion for dismissal.

In this case, Mr. Hogan in his amended complaint asserts that he is the father and guardian ad litem of Michael Hogan, a minor; that Walter Knoop is the owner of a 1950 Ford automobile which was kept and used as a family automobile and that Walter Knoop Jr. is Walter Knoop's son and a member of his household; that at all times pertinent Walter Knoop Jr. was using and operating the said automobile with his father's consent and for a family purpose; that on May 9, 1964, Walter Knoop Jr. was operating the said automobile in a northerly direction on Chestnut Street in the city of Grand Forks while Michael Hogan was riding in the said automobile as a guest passenger; that at that time and place Walter Knoop Jr. operated the said motor vehicle with such gross negligence and with such willful and wanton misconduct that the vehicle was caused to leave the street at an excessively high rate of speed and collide with a tree; that as the direct and proximate result of the gross negligence and willful and wanton misconduct of Walter Knoop Jr., Michael Hogan was seriously injured, and in connection with said injuries was hospitalized and required to undergo several operations; that his injuries will be permanent; that doctor and hospital and other bills were incurred in the sum of $1400 as a direct and proximate result of the accident. The complaint closes with a prayer that judgment be entered in favor of the plaintiff as an individual in

the sum of $1400 and in favor of the plaintiff as guardian ad litem of Michael Hogan in the sum of $25,000.

The amended answer of the defendants for the purposes of the issues involved in this lawsuit asserts that Michael Hogan was riding in the automobile as a guest passenger within the provisions of Chapter 39–14 of the North Dakota Century Code; and as an affirmative defense it asserts that at all times pertinent to this lawsuit Walter Knoop Jr. was intoxicated and that Michael Hogan was himself negligent and that his negligence contributed to and proximately caused the accident and that by his own actions he assumed the risk.

When the parties rested their cases, the trial court submitted to the jury, along with its instructions, special interrogatories and jury forms for general verdicts and asked the jury to answer the special interrogatories as well as render a general verdict. In answer to the special interrogatories, the jury found that the defendant Walter Knoop Jr. was not grossly negligent, that he was not guilty of willful misconduct, that he was under the influence of intoxicating liquor, that his intoxication resulted in his negligence, and that this negligence was the proximate cause of the accident and the resulting injuries to the plaintiff; that Michael Hogan was contributorily negligent, that his negligence contributed as a proximate cause to the accident and his resulting injuries, and that Michael Hogan assumed the risk. Notwithstanding those answers to the special interrogatories, the jury brought in a verdict for the plaintiff in the sum of $1400.

The plaintiff then moved for a new trial on the issue of damages only or in the alternative for a new trial, and the defendants moved for a judgment for the defendants notwithstanding the verdict for the plaintiff. The court granted the motion of the defendants and denied the motion of the plaintiff. The appeal is from the judgment of the court granting a dismissal of the plaintiff's action.

Since there seems to be little disagreement over the facts, we shall take the facts as they are stated basically by the appellant.

At about 6:30 p. m. on Friday, May 8, 1964, Walter Knoop Jr., after finishing his dinner, left home in the family's 1950 Ford automobile, which automobile his father had given him permission to use. After picking up his friends Allen King and Ed Julison at their homes, he drove to an alley near Michael Hogan's home, where he waited for Michael. When Michael arrived they all drove along the alley until they were alongside an old garage, where Michael and Ed got out of the car and picked up two cases of beer which they placed in the Ford. They then drove to Lincoln Park in Grand Forks, where one of the cases was stored near the Red River. Thereafter, Walter drove Michael over to Pete Ryan's home, where he left him.

Walter, Allen, and Ed then drove to Allen's home, arriving there about 7:30 p. m. While there, between one and a half to two hours, they drank the case of beer. Walter himself consumed eight to ten cans of beer. Sometime between 9 and 10 p. m. they left Allen's home and drove in Walter's automobile to the Boeing Trailer Park on the south edge of the city of Grand Forks, where a dance was in progress. Sometime between the hours of 10 p. m. and 11:15 p. m., Michael came to the dance, and he and Walter were in the company of each other at various times and occasions and at one point there occurred a pushing incident in which the two were involved. Michael claims that Walter urged him to push him to stage a fake fight, whereas Walter claims that Michael pushed him for no reason at all and that he then pushed back. While at the Boeing Trailer Park recreational facility, Walter danced with Virginia Triskle, who had known him for a period of about four years. She testified that she observed that his eyes were red and watery, that his speech was slow and slurred and not in his

normal tone of voice, that his body movements were slow and awkward, and that she did not have to get very close to him to smell liquor on his breath.

A Mr. Harold Johnson, a special deputy sheriff of Grand Forks County, was on duty at the dance. He said he had known Walter for about two years, having made his acquaintance at a Boy Scout Camp. He testified that he observed Walter at the dance and noted that he was staggering, that his eyes were glassy and watery and that his speech was incoherent. He noted the smell of alcohol on Walter's breath. Following the pushing incident he took Walter out of the dance hall and secured his car keys, which keys he then gave to another boy and girl, with instructions to take Walter home. He was of the opinion that Walter "was to a degree under the influence".

Another witness, Tim Monda, testified that he was close to Walter that night, but could smell nothing.

Michael testified that he did not see Walter drink any beer that evening, that he had not been told by Walter or anyone else that beer had been consumed, and that he saw nothing alarming about Walter's condition. He considered the pushing incident rather normal, as Walter had been, as Michael said, "fooling around like that all the time since school had started in the junior year". At about 11:45 p. m. Michael and Allen left the dance. They planned to leave with Pete Ryan, but Pete had already gone when Michael and Allen tried to find him. Michael then saw Walter and Ed in the Ford and went over and asked for a ride home. In driving home, Walter proceeded to 32nd Avenue South, turned west, drove to the intersection of 32nd Avenue South and U. S. Highway No. 81 (South Washington Street), where he stopped for a stop sign; he then turned right, heading north into town on Highway 81. At the intersection of Highway 81 and 17th Avenue South, Walter stopped for a red light. When it turned green, he turned right onto 17th Avenue South and proceeded east. He stopped for a stop sign at the intersection of 17th Avenue South and Cherry Street, and then on reaching the intersection of 17th Avenue South and Chestnut Street he executed a full left turn onto Chestnut Street and proceeded north.

About fifty to one hundred feet along Chestnut Street he slowed and shouted greetings to two friends, Jerry Lucke and Karen Sather, who were saying goodnight. Jerry, Karen, and Richard Young, who was in the car waiting for Jerry to return, all estimated the speed of Walter's car at that time from between fifteen to twenty-five miles per hour.

After shouting the greetings, Walter accelerated the Ford and went into an S-shaped curve at a speed estimated by his passengers to be forty to fifty miles per hour. Jerry and Karen testified that they heard "squealing of tires twice and then a crash". Both Michael and Ed testified that they asked Walter to slow down but, to the contrary, he accelerated and the car went out of control and collided with an oak tree.

Police officer Duane Hanson of the Grand Forks Police Department investigated the accident, arriving shortly after it occurred. He found no evidence of drinking and no evidence that Walter had applied his brakes. He attributed the accident to careless driving on the part of Walter, basing his opinion upon the amount of damage done to the vehicle, the absence of brake marks, and the fact that only one car was involved. He testified further that Chestnut Street was dry and that although it was a dark night the visibility was good.

For purposes of clarity and further discussion of the legal issues, hereafter we shall refer to the appellant as Hogan and the respondents as Knoop.

■ Hogan argues that on a motion for judgment notwithstanding the verdict, the evidence must be viewed in the light most

favorable to the verdict and that in viewing the evidence in that light in this case the judgment must be set aside.

Although that is the general rule applied when a motion for judgment notwithstanding the verdict is made, it does not apply in this case for the reason that the court asked for answers to special interrogatories in addition to a general verdict, which brings into play the application of 49(b) of the North Dakota Rules of Civil Procedure.

"General verdict accompanied by answer to interrogatories. The court may submit to the jury, together with appropriate forms for a general verdict, written interrogatories upon one or more issues of fact the decision of which is necessary to a verdict. The court shall give such explanation or instruction as may be necessary to enable the jury both to make answers to the interrogatories and to render a general verdict, and the court shall direct the jury both to make written answers and to render a general verdict. When the general verdict and the answers are harmonious, the court shall direct the entry of the appropriate judgment upon the verdict and answers. When the answers are consistent with each other but one or more is inconsistent with the general verdict, the court may direct the entry of judgment in accordance with the answers, notwithstanding the general verdict or may return the jury for further consideration of its answers and verdict or may order a new trial. When the answers are inconsistent with each other and one or more is likewise inconsistent with the general verdict, the court shall not direct the entry of judgment but may return the jury for further consideration of its answers and verdict or may order a new trial."

In the instant case, when the answers to the questions were consistent with each other, but some of them were inconsistent with the general verdict, the court was at liberty to direct the entry of judgment in accordance with the answers, and this is what the trial court did. It is immaterial that it also heard the motions of the parties before doing so. In this situation, then, the judgment will stand unless there is no evidence to support it. We find that there is evidence to support the judgment here.

■ Hogan next argues that it was error for the trial court to instruct the jury on the issues of contributory negligence and assumption of risk, for the asserted reason that there was not sufficient evidence in the record to justify submitting those issues to the jury. He refers us to McKeen v. Iverson, 47 N.D. 132, 180 N.W. 805 (1921), and Wheat v. Patterson, 154 N.W.2d 367 (N.D.1967), in support of his contention that mere knowledge on the part of a guest that a host has been drinking is not sufficient to constitute contributory negligence or assumption of risk.

*McKeen* is a 1921 decision of this court written by Judge Robinson and specially concurred in by Judges Bronson and Christianson, who wrote separate concurrences, and Judge Birdzell, who concurred without a separate opinion.

In that case, the jury answered special interrogatories, concluding that the plaintiff did not know or have reason to believe that there was danger in riding in the car and that the proximate cause of the accident was the reckless driving of the defendant. This the jury found, notwithstanding that the evidence apparently established that the driver and the passengers, or at least some of them, including the plaintiff, had been drinking together. The significance of that case, if any, to this case is that the court concurred in an opinion holding that the issue of contributory negligence was one for the jury, notwithstanding that the facts disclosed that the passenger knew that the host had been drinking, and that this knowledge did not require that the verdict be set aside, the answers to the interrogatories being consistent with the general verdict.

In *Wheat,* a decision decided by the trial court without a jury, this court sustained the judgment of the court for the plaintiff after reviewing the evidence and concluding that the defendant failed to establish by a preponderance of the evidence that the plaintiff assumed the risk or that he was contributorily negligent.

In *Wheat,* the case being tried anew in our court, our court acted as the trier of the facts. In the instant case we act as an appellate court, not the trier of the facts, and in such a case we are obligated to sustain the findings of the jury unless there is no evidence to support them. We cannot say from an examination of the record of the instant case that there is no evidence to support the findings of the jury on the issues of contributory negligence and assumption of risk.

As we have often said, it is the established rule of this court that questions of negligence, contributory negligence, and assumption of risk are questions of fact for the jury unless the evidence is such that reasonable minds can draw but one conclusion therefrom. Degenstein v. Ehrman, 145 N.W.2d 493, 503 (N.D.1966); Grenz v. Werre, 129 N.W.2d 681, 685 (N.D.1964); Bauer v. Kruger, 114 N.W.2d 553, 556 (N.D.1962).

Hogan in his original complaint did not allege that Knoop was driving while under the influence of intoxicating liquor, but at the end of the case and prior to its submission to the jury the complaint was amended to include an allegation that Knoop was driving while under the influence of intoxicating liquor. By the pleadings, then, Hogan conceded this fact. The jury was left only with the responsibility of determining whether that fact was known to Hogan and whether that fact was the proximate cause of the accident. The jury concluded by answers to the interrogatories that the defendant was intoxicated and that his intoxication "resulted in negligence induced by the intoxicated condition as a proximate cause of the accident and resulting injuries to the plaintiff."

Hogan next argues that the court erred in permitting testimony relative to the procurement of the beer and his part in it, asserting that such evidence was immaterial and irrelevant; that if relevant, it was so prejudicial and inflammatory that it should not have been received; and that it only tended to confuse and mislead the jury.

Hogan asks how it can be logically argued—merely because he had knowledge that Knoop, along with several others, had in his possession a quantity of beer—that he would have known: first, that Knoop would drink the beer that very night; second, that he would become intoxicated from it; and, third, that the intoxication would progress to the point where Knoop would be physically incapable of operating a motor vehicle.

Hogan further contends that even though a court should find material technically relevant, it should be excluded when its probative value is clearly outweighed by the dangers of undue prejudice or possible confusion of issues, or where the evidence will only confuse and mislead the jury. In support of this argument he cites United States v. Ravich, 421 F.2d 1196 (2 Cir. 1970); Lombardo v. Simko, 3 Conn.Cir. 363, 214 A.2d 911 (1965), cert. denied 153 Conn. 724, 213 A.2d 526; Wimberly v. City of Paterson, 75 N.J.Super. 584, 183 A.2d 691 (1962), cert. denied 38 N.J. 340, 184 A.2d 652.

Knoop contends that evidence of Hogan's procurement of the beer and its delivery to Knoop was relevant in determining whether Hogan knew or should have known of Knoop's intoxication and that that issue was relevant to the determination of whether or not Hogan assumed the risk or was contributorily negligent.

Relevance is defined in 1 Jones on Evidence (5th ed.) § 151, p. 269:

"Generally—Meaning of 'Relevancy.' —Mr. Best has observed: 'Of all rules of evidence, the most universal and most obvious is this, that the evidence adduced

should be alike directed and confined to matters which are in dispute or which form the subject of investigation. The theoretical propriety of this rule never can be a matter of doubt, whatever difficulties may arise in its application. The tribunal is created to determine matters which either are in dispute between contending parties or otherwise require proof; and anything which is neither directly nor indirectly relevant to those matters ought at once to be put aside, as beyond the jurisdiction of the tribunal and as tending to distract its attention and to waste its time.

"The law governing the relevancy of evidence is not susceptible of reduction to a code of specific and categorical rules. Professor Thayer has pointed out that no definition or statement of the theory of relevancy can be very satisfactory or afford any very practical aid to the practitioner, not only because of the complexity of human affairs and the infinitely varying forms which questions of fact assume in courts of justice, but also because relevancy is less an affair of the law than of logic and general experience.

"The rules of logic are called into operation to determine the question of relevancy; and it may be said, generally, that whatever naturally and logically tends to establish a fact in issue is relevant, and that which fails to qualify in this respect is not relevant."

In addition, Hogan refers us to another section from Jones, on relevance as it relates to the issue of contributory negligence:

"On the issue of contributory negligence, proof may be made of collateral facts which have some rational tendency to show an exercise of due care on the part of the person killed or injured, or a failure to use due care required by the circumstances. But facts which have no such tendency are irrelevant. * * * "

1 Jones on Evidence (5th ed.) § 189, p. 330.

With the quoted material from Jones we agree. It is only with the contention that the rules make the evidence relative to securing the beer inadmissible that we disagree.

In Volume 5, Blashfield Automobile Law and Practice (3rd ed.) § 215.30, commencing at page 389, we read:

"A guest or passenger in a motor vehicle may be guilty of contributory negligence in riding or continuing to ride with a driver who he knows, or in the exercise of ordinary care and diligence should know, is so intoxicated that he is unable to operate the vehicle with proper prudence or skill. This is especially true where the occupant has participated in drinking, or was instrumental in furnishing, the liquor with which the driver became intoxicated.

"If the driver of a vehicle is intoxicated, to the knowledge of the passenger or guest, the obligation resting on the latter to guard against the dangers of the highway is emphasized and heightened, and a guest's knowledge that the driver has been drinking is a matter for consideration in determining whether the guest was contributorily negligent. It is not, however, necessary that the guest should have had actual knowledge of the driver's intoxication, but the question is whether an ordinarily prudent man would have appreciated his condition and regarded him as intoxicated, and would not have consented to ride with him."

In support of the latter sentence, Blashfield cites Borstad v. La Roque, 98 N.W.2d 16 (N.D.1959).

■ Without discussing the many cases referred to in the parties' briefs, it is our conclusion that evidence relative to procurement of the beer was relevant and that the trial court did not abuse its discretion in permitting evidence relative thereto to be submitted to the jury.

■ We also conclude that it was not so inflammatory as to justify its being kept out on that ground. In this connection, we think the following is pertinent:

"It has been said that evidence must relate to, and be connected with, the transaction which it is to elucidate, and this connection must be immediate. However, that a fact is remote in point of time or probative value does not of itself preclude its admissibility, but its admissibility depends to a large extent on the nature and circumstances of the case, and rests largely in the discretion of the trial court. * * *

"The mere fact that evidence, otherwise relevant and of probative value, is incomplete, weak, or somewhat prejudicial, does not necessarily require its exclusion. * * *" 29 Am.Jur.2d Evidence § 253.

We conclude, therefore, that the trial court did not abuse its discretion in permitting evidence of the procurement of the beer.

Hogan next argues that the course of conduct followed by defense counsel throughout much of the trial was such as to deny him a fair trial, asserting that defense counsel constantly sought to inflame the prejudices and passions of the jury in a manner designed to ridicule the plaintiff and his witnesses.

During the trial, defense counsel sought to elicit, through cross-examination of the plaintiff and witnesses for the plaintiff, information concerning procurement of the beer, plans for the evening, and activities of the evening, preceding the accident. In response to the questions seeking this information, Hogan and a number of his witnesses declined to answer the questions on the ground that answers to those questions might tend to incriminate them. In other words, they took the Fifth Amendment.

Hogan contends that these questions were asked merely to inflame the jury and

that this is the result that the questions had and, accordingly, that he must be given a new trial. In support of his position, he refers us to Alford v. United States, 282 U.S. 687, 51 S.Ct. 218, 75 L.Ed. 624 (1931), and to United States v. Five Cases, 179 F.2d 519, at page 523 (C.A.2, 1950).

Having concluded, as indicated by previous discussion in this opinion, that questions relative to the procurement of the beer were relevant, that determination for the most part disposes of this contention.

■ In the instant case, the situation was not one where counsel was attempting to bring an extraneous matter unconnected to the issues of the lawsuit into the lawsuit merely for the purpose of creating passion and prejudice. Counsel was attempting to elicit information concerning procurement of the beer, plans for its use, and activities of the evening, all for the purpose of aiding the jury in determining whether Hogan knew or should have known whether Knoop consumed alcohol to the point where he was incapable of safely operating a motor vehicle. These questions were pertinent in determining the issue of contributory negligence and assumption of risk.

■ Whether there should be a new trial for misconduct of counsel was left almost entirely to the discretion of the trial court, whose action in this respect will not be reversed on appeal except for clear abuse of discretion. 5 Am.Jur.2d Appeal and Error § 896, Misconduct of Counsel, page 335.

Let us examine the *Alford* decision referred to us. In that case, the petitioner was charged with having used the mails to defraud. After a witness for the prosecution had testified to uncorroborated conversations with the defendant of a damaging character, defense counsel on cross-examination asked, "Where do you live?"

In the ensuing colloquy with the court, defense counsel said that he was informed that the witness was then in court in custo-

dy of the federal authorities and that that fact could be brought out on cross-examination to show whatever bias or prejudice the witness might have.

In holding that the trial court erred in sustaining the objection to the question asked on cross-examination, the Circuit Court of Appeals for the Ninth Circuit said:

"The extent of cross-examination with respect to an appropriate subject of inquiry is within the sound discretion of the trial court. It may exercise a reasonable judgment in determining when the subject is exhausted. [Citations omitted.] But no obligation is imposed on the court, such as that suggested below, to protect a witness from being discredited on cross-examination, short of an attempted invasion of his constitutional protection from self incrimination, properly invoked. There is a duty to protect him from questions which go beyond the bonds of proper cross-examination merely to harass, annoy or humiliate him." Alford v. United States, 282 U.S. 687, 51 S.Ct. 218, 220, 75 L.Ed. 624 (9th Cir. 1931).

Our analysis of *Alford* does not convince us that under it the appellant is entitled to any relief.

That part of the cross-examination of witness Allen King as to who advised him to take the Fifth Amendment may have been outside of the issues involved in the lawsuit, but notwithstanding that fact, we do not believe that it was so prejudicial to the plaintiff as to justify a new trial.

Let us briefly consider United States v. Five Cases, *supra.* In that case, the defendant corporation was charged with having adulterated edible oil, contrary to the Federal Food, Drug and Cosmetics Act. During the trial, the government offered evidence to show that material possibly used by the defendant to adulterate its product was shipped to the defendant's neighbor, one Memmoli in Brooklyn.

When Memmoli was called to testify and he was asked his occupation, he claimed his privilege against self-incrimination, disclosing that he was under federal indictment in New York. Thereafter a series of questions was put to him, culminating in the question whether he had sold any squalene to the claimant. As to each question he claimed his privilege. The claimant then moved for a mistrial on the ground that the propounded questions were prejudicial to it. In concluding that the motion for mistrial was properly denied, the United States Court of Appeals for the Second Circuit said:

"In Wigmore on Evidence, 3d ed. § 2268, the learned author says: 'The privilege is merely an *option of refusal,* not a prohibition of inquiry,' and 'it is universally conceded that the question may be put to the *witness on the stand.*' [Emphasis in original.] Nevertheless we are not prepared to say that it would not be ground for reversal if the party who called a witness connected with a challenged transaction knew, or had reasonable cause to know, before putting the witness on the stand that he would claim his privilege." United States v. Five Cases, 179 F.2d 519, 523 (2nd Cir. 1949).

It is the latter sentence of the quotation upon which Hogan relies.

We would draw attention to the fact first of all that the latter sentence is merely dictum. Secondly, we think it important to note that this court is not bound to adhere to a rule of law applied by the Second Circuit, much less its dictum. Thirdly, we are more impressed with the first sentence of the quotation than with the second sentence, and under the facts and circumstances of this case, it is our view that the propounding of the questions objected to, which resulted in the resort to the Fifth Amendment, did not justify a new trial. This was the decision of the trial court, which saw and heard counsel and witnesses, all in the presence of the jury, and

which was in a much better position to determine the effect of the questions and answers on the jury than this court.

■ The next argument is that the trial court erred in submitting special interrogatories to the jury, for the asserted reason that there existed no necessity to do so and that by so doing the trial court confused and misled the jury and placed undue emphasis on the subject of intoxication. Hogan further contends that the form of the special interrogatories was improper and contrary to Rule 49(b) of the North Dakota Rules of Civil Procedure.

As an example of impropriety, he quotes Interrogatory No. 9 as follows:

"Do you find from a preponderance of the evidence that the plaintiff Michael Hogan 'assumed the risk' as that term has been defined to you in the instructions of the Court by accepting a ride in the vehicle of the defendant Walter Knoop, Jr.?"

In deciding this contention, we have examined the form of the questions and have concluded that they merely acted to pinpoint the responsibility of the jury in determining the issues in the lawsuit. Hogan has failed to point out wherein the interrogatories forced upon the jury a responsibility other than it would otherwise have had in determining the issues of the lawsuit under the instructions in this case. The mere fact that the jury was required to answer the same questions in writing that it otherwise would have had to answer in order to determine a general verdict did not result in prejudice.

We do not think that the mere fact that the questions called for what Hogan considers conclusions of law makes them improper.

■ The last argument is that there were errors in the verdict returned by the jury which required the granting of a new trial, in that the verdict returned by the jury, "$1400 medical", established that the jury had compromised the verdict.

It is our view, in light of our previous conclusion that it was proper for the trial court under Rule 49(b) of the North Dakota Rules of Civil Procedure to grant judgment of dismissal of the plaintiff's action notwithstanding the general verdict for the plaintiff, that this issue is now moot.

Accordingly, for the reasons stated in this opinion, the judgment of the trial court is affirmed.

STRUTZ, C. J., and PAULSON, KNUDSON, and TEIGEN, JJ., concur.