### KENNETH HALVORSON v. AMERICAN HOIST AND DERRICK COMPANY. BARTON CONTRACTING COMPANY, THIRD-PARTY DEFENDANT.

240 N. W. 2d 303.

January 23, 1976—No. 44705.

*Faegre & Benson, James Fitzmaurice,* and *Joseph M. Price,* for appellant.

*Abrams & Spector* and *Mitchell R. Spector,* for respondent Halvorson.

*Jardine, Logan & O'Brien* and *Michael J. Healey,* for respondent Barton Contracting Co.

Heard before Sheran, C. J., and Otis, Kelly, and Todd, JJ., and considered and decided by the court en banc.

KELLY, JUSTICE.

Defendant American Hoist and Derrick Company appeals from an order of the district court denying its post-trial motion following a jury verdict finding American Hoist 25-percent causally negligent and plaintiff's employer, Barton Contracting Company, 75-percent causally negligent. The district court denied American Hoist's third-party claims of indemnity and contribution against Barton. We hold that American Hoist was not negligent as a matter of law, and we therefore do not reach other issues it raised.

On June 7, 1968, plaintiff, Kenneth Halvorson, was employed by Barton on a highway construction crew which was surfacing a rural highway turn lane near Duluth. The surfacing was accomplished by pouring concrete from a portable mixer and level-

ing it with a machine called a screed. A screed consists of two steel boards approximately 12 feet by 8 feet by 6 inches. The screed was moved from place to place on the site on a flatbed truck or lowboy. It was lifted in and out of the lowboy by a Model 395BT truck crane manufactured by American Hoist.

Halvorson was on his hands and knees finishing a portion of the highway surface by hand when he noticed that the truck crane, holding the screed, had moved close to him. As the crane was lowering the screed to the highway surface, the screed began to sway back and forth and toward a water truck parked alongside it. In an effort to steady the screed and prevent it from striking the truck, Halvorson stood up and grabbed the screed with both hands. At that time the lifting cable attached to the crane boom contacted a 7,000-volt power line, and Halvorson received a severe shock as electricity was transmitted down the cable and through the screed.

Halvorson received workmen's compensation benefits from his employer Barton and brought this third-party action against American Hoist. He contended that the absence of certain safety devices from the crane, notably (1) a sensor device which would allegedly sound a warning if the boom approached a power line, and (2) an insulated hook which would allegedly prevent an electrical charge in the lifting cable from passing down the cable and into the load, constituted negligence and strict liability under Restatement, Torts 2d, § 402A. There was conflicting expert testimony and experimental evidence as to the effectiveness of these devices in preventing electrocution.

Albert Shanyo, the Barton foreman who was hand signaling the operator of the crane at the time of the accident, testified that although he had observed the power lines earlier, his attention was directed to the screed as he was signaling and he did not notice that the lifting cable had contacted the line until after the accident had occurred. Plaintiff Halvorson testified that he knew power lines could be expected along country roads and were dangerous. He further testified that although it was his usual

practice to check for power lines, he did not do so on this occasion. He agreed that no one had to tell him that he could be electrocuted if the boom or lifting cable of the crane came in contact with a power line while he was holding the load.

One of the exhibits introduced by American Hoist was its Operator's Instruction Manual. The first page of that manual contains the explicit instruction: "N. Do not maintain less than 6 feet of clearance around high voltage lines." A copy of that page accompanies this opinion.

The jury returned a verdict finding no strict liability, but finding 25-percent causal negligence on the part of American Hoist and 75-percent on the part of Barton. Plaintiff was found negligent, but his negligence was found not to be a cause of his injuries. We set forth the verdict of the jury in full:

"We, the jury, empaneled and sworn for the trial of the above-entitled action, do answer the questions submitted as follows:

"QUESTION No. 1: At the time the truck-crane left the American Hoist and Derrick Company, was it in a defective condition, unreasonably dangerous to a user of the crane, because of the absence of a sensor device or insulated swivel? Answer: No.

"QUESTION No. 2: If your answer to Question No. 1 is 'Yes', then answer this question: Was such a defect a direct cause of plaintiff's injury? Answer: (None)

"QUESTION No. 3: Was Barton Contracting Company negligent in the operation or control of the crane? Answer: Yes.

"QUESTION No. 4: If your answer to Question No. 3 was 'Yes', then answer this question: Was such negligence a direct cause of plaintiff's injury? Answer: Yes.

"QUESTION No. 5: Was American Hoist and Derrick Company negligent in the design, manufacture, inspection or testing of the crane? Answer: Yes.

"QUESTION No. 6: If your answer to Question No. 5 was 'Yes',

then answer this question: Was such negligence a direct cause of plaintiff's injury? Answer: Yes.

"QUESTION NO. 7: Was the plaintiff, Kenneth Halvorson, negligent? Answer: Yes.

"QUESTION NO. 8: If your answer to Question No. 7 is 'Yes', then answer this question: Was such negligence a direct cause of plaintiff's injury? Answer: No.

"QUESTION NO. 9: If you find by your answers to Questions No. 2, 4, 6 and 8 that the conduct of more than one of the parties was a direct cause of the accident, then answer the following: Taking the combined fault that caused the accident as 100 percent, what percentage of the fault is attributable to:

| | |
|---|---|
| Kenneth Halvorson | 0%. |
| American Hoist and Derrick Company | 25%. |
| Barton Contracting Company | 75%. |
| | |
| Total: | 100%. |

"QUESTION NO. 10: What damages did Kenneth Halvorson sustain as a result of the accident in question? Answer: $60,000.

"NOTE: Question No. 10 must be answered by you without consideration of your answers to all the other questions in the Special Verdict.

"It is your duty to assess damages in accordance with the court's instructions regarding the measure of damages.

"Your answer to the above question must be made without reference to any apportionment of fault."

The trial court denied American Hoist's claim for equitable [1]

---

[1] American Hoist argues that fundamental fairness requires indemnity here, citing several of our previous decisions including Haney v. International Harvester Co. 294 Minn. 375, 201 N. W. 2d 140 (1972); Keefer v. Al Johnson Constr. Co. 292 Minn. 91, 193 N. W. 2d 305 (1971); Hillman v. Ellingson, 298 Minn. 346, 215 N. W. 2d 810 (1974).

or contractual [2] indemnity or contribution [3] from Barton and entered judgment on the verdict against American Hoist for the full amount of plaintiff's damages.

The jury found that American Hoist was not strictly liable because of the absence of safety devices on its crane, but held it 25-percent negligent for failing to install those devices. As to strict liability, the jury was instructed in part:

"Now, in that regard, a user of a product, and, for our purposes here, Mr. Halvorson would be a user, is entitled to recover damages from a manufacturer of a product, if, one, the product is in a defective condition, two, the defective condition of the product makes it unreasonably dangerous to the user, and, three, the defective condition of the product was in existence at the time the product was in the possession of the seller. Four, it is expected that the product will reach and it does reach the user without substantial change in the condition in which it was sold. Five, the defective condition causes physical harm to the user.

"This rule as stated applies, although the manufacturer or seller has exercised all possible care in the preparation and sale of this product. A product is not in a defective condition if it performs reasonably, adequately and safely the normal anticipated

---

[2] American Hoist argues that it is entitled to full indemnity from Barton under a "hold harmless" provision of a sales contract between Barton and Machinery Investment Corporation, a selling subsidiary of American Hoist. That provision reads as follows: "That he [the buyer] will and does indemnify and hold the Seller harmless from any and all liability, including costs and attorneys' fees, arising from or injury or damage to property or persons, caused in any manner by the possession, use or operation of said property."

[3] American Hoist assails our holdings that employers and third-party tortfeasors are not under a "common liability" to injured employees, and therefore no contribution lies. See, e. g., Hendrickson v. Minnesota Power & Light Co. 258 Minn. 368, 104 N. W. 2d 843 (1960). It argues that we should abolish the common liability test and hold Barton liable in contribution for 75 percent of the damages here, in accordance with the percentage of negligence found by the jury.

specified uses to which the seller intends that it be put. A condition is unreasonably dangerous if the product is dangerous when used by an ordinary user who uses it with knowledge common to the community as to the products' characteristics and common usage. A product is in defective condition if it is not reasonably fit for the ordinary purpose for which it was sold or manufactured and expected to be used.

"A product which is sold with instructions and/or warnings is not in a defective condition nor is it unreasonably dangerous if a product is safe when used in accordance with the instructions and/or warnings. Before the strict liability rule can apply, the party asserting the rule must prove that a defect existed when it left the possession of the party charged and was unreasonably dangerous to the user."

This instruction is in accord with 4 Hetland & Adamson, Minnesota Practice, Jury Instruction Guides (2 ed.) JIG II 118, and our decisions in McCormack v. Hankscraft Co. Inc. 278 Minn. 322, 154 N. W. 2d 488 (1967) (in which we adopted Restatement, Torts 2d, § 402A) ; Magnuson v. Rupp Mfg. Inc. 285 Minn. 32, 171 N. W. 2d 201 (1969) ; and Waite v. American Creosote Works, Inc. 295 Minn. 288, 204 N. W. 2d 410 (1973).

As to negligence, the jury was instructed in part as follows:

"Now, negligence is the failure to use reasonable care. Reasonable care is that care which a reasonable person would use under like circumstances. Negligence is the doing of something which a reasonable person would not do or the failure to do something which a reasonable person would do under like circumstances.

"We now come to the question of a manufacturer's duty of care. A manufacturer of a product has the duty to use reasonable care in the design, manufacture and inspection or testing of the product to protect those who would use the product from unreasonable risk or harm while the product was being used for its normal and intended use.

"The manufacturer or supplier of goods has the duty to give a reasonable warning as to the dangers inherent, or reasonably foreseeable when using the goods in the manner specified. This duty applies even though the goods may not be used in their specified manner so long as such use is one that the manufacturer or supplier should reasonably foresee. Whether or not such a duty has been violated depends upon the risks of the situation, the dangers known or reasonably to be anticipated or foreseen, and all of the attending facts and circumstances as you see them."

This instruction was substantially taken from 4 Hetland & Adamson, Minnesota Practice, Jury Instruction Guides (2 ed.) JIG II 101, 403, and 404, and conforms to our previous decisions in this area. As we stated in McCormack:

"At this late date in the development of the law relating to the tort liability of manufacturers of all types of products for injuries caused by their products, there can be no doubt that a manufacturer is subject to liability for a failure to use reasonable care in the design of its product to any user or consumer, including any person who may reasonably be expected to be in the vicinity of its use, to protect against unreasonable risk of physical harm while the product is used for its intended purpose. Such liability may equally be predicated upon a failure to use reasonable care in giving adequate and accurate instructions as to the use of the product and a warning as to any dangers reasonably foreseeable in its intended use. Lovejoy v. Minneapolis-Moline Power Imp. Co. 248 Minn. 319, 79 N. W. (2d) 688." 278 Minn. 331, 154 N. W. 2d 496.

The common element in both negligence and strict liability theories of product liability is some kind of dangerous defect rendering the product unreasonably dangerous for its intended use.[4] Unless such a dangerous defect can be found, our previous

---

[4] 1 Hursh & Bailey, American Law of Products Liability 2d, § 1:7, and cases cited.

cases would impliedly support a holding of no liability as a matter of law. See, e. g., McCormack v. Hankscraft Co. Inc. 278 Minn. 322, 333, 154 N. W. 2d 488, 497; Magnuson v. Rupp Mfg. Inc. 285 Minn. 32, 171 N. W. 2d 201. In this vein, one commentator has observed:

"It has been argued that a rule of 'strict liability' which permits recovery for injuries arising out of defects in products only when those defects give rise to unreasonable dangers is borrowed from negligence theory [citing Wade, *Strict Tort Liability of Manufacturers*, 19 Sw. L. J. 5]. That is an apt observation, since both traditional negligence analysis and the 'unreasonable danger' analysis make liability depend upon whether the utility of the product or conduct in question outweighs, in light of all of the circumstances, the risk of injury and the burden of taking precautions to prevent it." Comment, 1 Wm. Mitchell L. Rev. 207, 217.

Based on the above analysis, and under the facts in this case, the jury's findings of no strict liability but 25-percent negligence are inconsistent and irreconcilable. Implicit in the former finding is the conclusion that the crane was not a dangerous, defective product because of the absence of safety devices. Implicit in the latter finding is the contrary conclusion that the crane created an unreasonable risk of harm because of the absence of the same safety devices. These conclusions cannot be reasonably reconciled. If a product is not dangerous and defective in the absence of safety devices, it is not negligence to manufacture it that way.

Normally such inconsistent findings would result in a remand for a new trial, but further analysis leads us to conclude that plaintiff could not recover as a matter of law on either the theory of strict liability or of negligence.

If the instructions given by the trial court in this case are appropriate we should note that both as to strict liability and as to negligence, there should be no liability on the part of a manu-

facturer if the product is safe when used in accordance with the instructions or warnings. We have previously pointed out that a common element in both strict liability and negligence theories is some dangerous defect which renders the product unreasonably dangerous for its intended use.[5] Here the manufacturer warned against using the product within 6 feet of any power lines. Additionally, Barton, the employer, and plaintiff, its employee, knew of the danger involved.

We hold that American Hoist did not owe this injured plaintiff any duty to install safety devices on its crane to guard against the risk of electrocution when the record demonstrated that risk was: (1) Obvious; (2) known by all of the employees involved; and (3) specifically warned against in American Hoist's operations manual. While no Minnesota case has expressly faced this issue in a negligence context, one of our cases did deny strict liability when plaintiff was aware of the defect. Magnuson v. Rupp Mfg. Inc. 285 Minn. 32, 171 N. W. 2d 201 (1969). The general rule in other jurisdictions is that there is no recovery for negligent design where the danger is obvious. Frumer & Friedman, 1 Products Liability, § 7.02. See, Campo v. Scofield, 301 N. Y. 468, 95 N. E. 2d 802 (1950). Restatement, Torts 2d, § 388, is particularly relevant to this type of case:

"One who supplies directly or through a third person a chattel for another to use is subject to liability to those whom the supplier should expect to use the chattel with the consent of the other or to be endangered by its probable use, for physical harm caused by the use of the chattel in the manner for which and by a person for whose use it is supplied, if the supplier

(a)   knows or has reason to know that the chattel is or is likely to be dangerous for the use for which it is supplied, and

(b)   has no reason to believe that those for whose use the chattel is supplied will realize its dangerous condition, and

(c)   fails to exercise reasonable care to inform them of its

---

[5] See footnote 4, *supra.*

dangerous condition or of the facts which make it likely to be dangerous."

It is clear from the record that neither (b) nor (c) of this section is present in the instant case. American Hoist had good reason to believe that experienced highway construction personnel would realize the danger of contacting power lines with its crane and, indeed, the plaintiff and Barton were admittedly both aware of this danger. More important, American Hoist clearly warned against the precise occurrence involved in the instant case on the first page of its Operator's Instruction Manual. Both Barton and plaintiff violated those instructions by using the crane within 6 feet of a high voltage power line, a use that was not intended by anyone.

Our holding that plaintiff cannot recover as a matter of law is dispositive of all issues raised.

Reversed.

## APPENDIX

AMERICAN HOIST & DERRICK CO.

ST. PAUL, MINNESOTA 55107

IMPORTANT SUGGESTIONS FOR CRAWLER

AND TRUCK CRANE OPERATORS

1. Keep machine clean. Dirt covers up troubles in the making. Quick inspection is possible in a clean machine.
2. Lubricate regularly in accordance with instructions. Keep fuel oil and lubricants clean. Use clean water in radiator.
3. A. Do not gamble when ground is soft. Use mats where needed.
   B. Do not exceed the rated capacity of the machine. (Radius is measured from the center pin, or of rotation, to center of load block.)
   C. Do not drag load sideways by swinging.
   D. Do not travel with swing brake released.
   E. Do not travel with load swinging back and forth as it

may cause crane to tip. Use tagline to keep swing out of load.

F. Do not leave crane or shovel with bucket or load suspended in air.

G. Do not lift a heavy load without first checking the brakes, wire rope, and rigging. Wire rope should be checked for wear and stranding, and should be replaced if defective.

H. Do not lift bucket or load after machine has been standing during rainy weather without riding the brakes to evaporate moisture before handling load.

I. Do not start engine with master clutch engaged.

J. Do not engage master clutch until you are sure that everything is in the clear and in neutral.

K. Do not engage master clutch unless engine is idling.

L. Do not travel over rough ground with a high boom.

M. Do not back up with boom high without first making sure that ground is level and free of obstructions.

N. Do not maintain less than 6 feet of clearance around high voltage lines.

O. Do not travel long distances with traction chains ahead.

P. Do not operate on a steep slope without the use of blocking. A chain might fail.

Q. Do not cut the crawlers sharply in loose ground as accumulation of dirt will result in excessive loading of drive chain and crawler treads.

R. Do not sweep with shovel unless hoisting while swinging.

S. Do not adjust brakes, clutches or booster clutches before consulting your Instruction manual.