Betty and John ANDERSEN,
Plaintiffs and Appellees,

v.

TEAMSTERS LOCAL 116 BUILDING
CLUB, INC., General Drivers, Helpers,
Warehousemen, Dairy Employees, and
Inside Workers Local Union 116, Defendants,

Hysan Corporation, Defendant
and Appellant.

Civ. No. 10488.

Supreme Court of North Dakota.

Feb. 23, 1984.

As Substituted May 10, 1984.

Dosland, Dosland & Nordhougen, Moorhead, Minn., for plaintiffs and appellees; argued by J.P. Dosland, Moorhead, Minn.

Gjevre, McLarnan, Hannaher, Vaa, Skatvold & McLarnan, Moorhead, Minn., for Teamsters.

Vogel, Brantner, Kelly, Knutson, Weir & Bye, Fargo, for Hysan Corp.; argued by Beryl J. Levine, Fargo.

SAND, Justice.

Defendant Hysan Corp. (Hysan) appealed from a district court order denying its motion for a judgment notwithstanding the verdict, or, alternatively, their motion for a new trial in a personal injury action brought by plaintiffs Betty and John Andersen.

On 14 March 1980 Betty, after returning home from work, drove to the Teamsters Hall in Fargo to pick up her husband, John. She arrived about 8:00 p.m. and joined John and several others at a table in the lounge. She wore the shoes she had on for work which were heavy, steel-toed, rubber-soled work boots. During the next hour, Betty drank two or three drinks. About 9:30 p.m. she began to dance with one of the men seated at the table. The floor had been sprinkled with a dance wax manufactured by Hysan, and while Betty was dancing she saw the Teamster Hall manager sprinkle more wax next to where she was dancing. Betty was dancing apart from her partner to some moderately tempoed music when she slipped, fell, and fractured her right wrist.

Because of her injury, Betty was in the hospital five times, had four surgeries, and had sixteen or seventeen casts or splints on her arm over a three-year period. She now has a fifty percent permanent impairment of her wrist.

Andersens brought an action against the Teamsters and Hysan alleging that the Teamsters' maintenance of the dance floor and Hysan's defective product caused Betty's injuries. Andersens alleged negligence against the Teamsters and product liability against Hysan. Andersens further alleged that Hysan negligently manufactured and packaged the wax and that Hysan did not provide sufficient instructions and warnings for its use.

The jury was given a special verdict form in which it was asked if Hysan's dance floor wax was a defective and unreasonably dangerous product, and the jury answered "No." However, in response to the question if Hysan was negligent, the jury answered "Yes." The jury determined that Betty had suffered damages of $150,000 and found Hysan fifty-five percent negligent and Betty forty-five percent negligent.[1] The jury further found no negligence against the Teamsters and denied damages to John for loss of consortium.

---

**1.** We recently held that 50% contributing causal negligence or fault will not bar a recovery in products liability or strict liability actions. *Day v. General Motors Corp.,* 345 N.W.2d 349 (N.D. 1984). We further held that the comparison of causations in a products liability or strict liability action should be on a pure comparative causation basis rather than the modified comparative basis of NDCC § 9–10–07. *Mauch v. Manufacturers Sales & Service, Inc.,* 345 N.W.2d 338 (N.D.1984). Thus, in a products liability action, even if Andersen had been adjudged only fifty percent negligent Hysan would not have been relieved of liability.

Hysan's appeal raised several issues. However, we will identify and consider only those issues that are dispositive.

Hysan argued primarily that the special jury verdict finding the product not defective and at the same time finding Hysan fifty-five percent negligent is inconsistent and irreconcilable as a matter of law.

■ A seller or manufacturer of a product may incur liability under the doctrine of products liability in two ways. A product is defective within the meaning of products liability if it is unreasonably dangerous to the user or consumer or to his property. *Johnson v. American Motors Corp.*, 225 N.W.2d 57, 66 (N.D.1974) (adopting Restatement (Second) of Torts § 402A). A product may also be defective if the manufacturer or seller has reason to anticipate a danger from the use of the product and fails to give an appropriate warning. *Schmidt v. Plains Electric, Inc.*, 281 N.W.2d 794, 802 (N.D.1979); 63 Am.Jur.2d *Products Liability* § 131 (1972).

The duty to provide appropriate warning may be subdivided into a duty to provide appropriate directions for safe use, both intended and reasonably anticipated, and a duty to warn against dangers inherent with misuse. *Seibel v. Symons Corp.*, 221 N.W.2d 50, 54–55 (N.D.1974); *Olson v. A.W. Chesterton Co.*, 256 N.W.2d 530, 535 (N.D.1977). As we noted in *Seibel*, directions and warnings serve different purposes. Directions promote effective use, warnings promote safe use. Thus, di-

rections for use which "merely tell how to use the product . . . do not necessarily satisfy the duty to warn." *Seibel, supra,* at 55. In addition, the directions and warnings must be adequate regarding their clarity, completeness, and method of communication. *Ibid.*

■ The failure to give proper instructions or to adequately warn are grounds for a cause of action in a products liability matter. It is recognized in NDCC §§ 28–01.1–06(2) and 28–01.1–02(1)(d).[2] See also 1A Frumer and Friedman, *Products Liability, Duty to Warn,* § 8.05, et seq.

■ Our review of the authorities and case law compels us to conclude that in products liability actions the manufacturer's liability is not necessarily eliminated upon a jury finding that the product was not defective or "unreasonably dangerous."[3] Thus, the manufacturer of a product can be held liable even though the product itself is not defective or "unreasonably dangerous," if the injuries were sustained as a result of misuse of the product because the instructions or directions were not adequate or the warnings were not properly given.

The special verdict forms in the instant case were approved by all parties involved.[4] In retrospect we would have no hesitation to say that the instructions and special interrogatories could have been more specific. Also, if additional special interroga-

---

**2.** NDCC § 28–01.1–06(2) reads as follows:

" 'Product liability action' means any action brought against a manufacturer or seller of a product, regardless of the substantive legal theory or theories upon which the action is brought, for or on account of personal injury, death, or property damage caused by or resulting from the manufacture, construction, design, formula, installation, preparation, assembly, testing, packaging, labeling, or sale of any product, or the failure to warn or protect against a danger or hazard in the use, misuse, or unintended use of any product, or the failure to provide proper instructions for the use of any product."

NDCC § 28–01.1–02(1)(d) reads as follows:

"d. Failure to proper instruct in the use of a product."

**3.** "Unreasonably dangerous" is defined in NDCC § 28–01.1–05(2):

"2. As used in sections 28–01.1–01 through 28–01.1–05 'unreasonably dangerous' means that the product was dangerous to an extent beyond which would be contemplated by the ordinary and prudent buyer, consumer, or user of that product in that community considering the product's characteristics, propensities, risks, dangers, and uses, together with any actual knowledge, training, or expense possessed by that particular buyer, user, or consumer."

**4.** The rhetorical question may be asked, Why was the question asked whether or not Hysan was negligent if the answer would have been included in the response to the first question?

tories had been submitted to the jury inquiring whether or not proper directions on the use of the product and adequate warnings were given, conceivably, the issues under consideration would be nonexistent. If the jury answered "Yes" in response to such interrogatories, meaning that proper directions and warnings were given, the general verdict of liability in this case would be inconsistent with the special interrogatory, particularly if the jury had found that the product was not defective or "unreasonably dangerous." However, if the jury answered "No," meaning that the proper instructions or directions or warnings were not given, such answer would be consistent with the general verdict finding the defendant liable.

This Court, in *Hogan v. Knoop*, 191 N.W.2d 263, 269 (N.D.1971), before Restatement of Law (2d) § 402A was adopted, referred to Rule 49(b), North Dakota Rules of Civil Procedure, and then observed that in instances where the answers to interrogatories are consistent with each other, but some of them are inconsistent with the general verdict, the court was at liberty to direct the judgment in accordance with the answers. In substance, the Court said that an effort must be made to reconcile the jury special verdict, if possible, with the general verdict if the evidence supports the general verdict. The evidence in the instant case supports the general verdict, as explained infra.

■ Hysan, for its position, relied heavily upon *Halvorson v. American Hoist & Derrick Co.*, 307 Minn. 48, 240 N.W.2d 303 (1976), a products liability action involving special interrogatories. In *Halvorson* the jury answered the special interrogatories, in pertinent part, as follows:

"QUESTION NO. 1: At the time the truck-crane left the American Hoist and Derrick Company, was it in a defective condition, unreasonably dangerous . . .?

Answer: No.

. . . . .

"QUESTION NO. 5: Was American Hoist and Derrick Company negligent in the design, manufacture, inspection or testing of the crane?

Answer: Yes.

"QUESTION NO. 6. Was such negligence a direct cause of plaintiff's injury?

Answer: Yes."

It becomes quite clear in examining these questions and answers that they are irreconcilable, but in the instant case the special interrogatories or verdicts are not irreconcilable. The jury found the product not to be "defective and unreasonably dangerous," but, as has been pointed out earlier, the manufacturer can still be held liable if it failed to give adequate instructions, directions or warnings. The jury was instructed that "When considering whether the product ... was defective and unreasonably dangerous, you may consider ... the avoidability of injury by care and use of the product including the effect of instructions or warnings ...."

*Halvorson* is not very helpful to the instant case because the jury found that directions and warnings were given and the issue was decided favorably to the defendant. Furthermore, *Halvorson* was partially overruled on other grounds in *Holm v. Sponco Mfg., Inc.*, 324 N.W.2d 207 (Minn. 1982).

In *Wagner v. International Harvester Co.*, 611 F.2d 224 (8 Cir.1979), the court applied Minnesota law to a products liability action involving special verdicts. The jury answered the special verdict questions as follows:

"1. Was International Harvester Company negligent in its design, testing, or manufacture of the 500C tractor with reference to its stability or the use of a left foot decelerator?

Yes
'Yes' or 'No'

"2. Was such negligence a direct cause of the accident and resulting injury to Charles P. Wagner?

Yes
'Yes' or 'No'

"3. Was the design of the 500C tractor defective by reason of its being designed and equipped with a left foot decelerator?

No
'Yes' or 'No'"

After discussing a number of the Minnesota cases the court concluded that the special verdict or interrogatories could be

reconciled. Of specific interest, in footnote 6, the Court observed as follows:

> "Apart from the substance of IHC's inconsistency claim, we note that IHC did not object to the form of the special verdict or demand that the issue of instability be submitted independently. *See* Fed.R.Civ.P. 49(a). [North Dakota Rule 49 is not in any respect identical to the federal rule.] Moreover, IHC expressly declined to have the jury resume its deliberations in an effort to resolve any inconsistency in the verdict answers at issue here...." *Wagner, supra,* at 229.

█ The record before us reflects that no objection by either party was made or filed regarding the special verdict forms. Generally, a question not raised or considered in the trial court cannot be raised for the first time on appeal. *Family Center Drug Store, Inc. v. North Dakota State Bd. of Pharmacy,* 181 N.W.2d 738, 739, Syll. ¶ 5 (N.D.1970). Moreover, we have said that where no objection to a special verdict form was made and no other form was requested, the finding upon the special verdict is binding. *Farmers Union Grain Terminal Assn v. Nelson,* 223 N.W.2d 494, 499 (N.D.1974). Finally, no effort was made after the verdicts were received to have the matter resubmitted to the jury for further consideration or clarification.

In *Hasson v. Ford Motor Co.,* 19 Cal.3d 530, 138 Cal.Rptr. 705, 564 P.2d 857 (1977), the court considered whether or not a special verdict and general verdict were inconsistent. The jury answered the special interrogatories, in relevant part, as follows:

"1. In these cases, were any of the following defendants negligent?

| | | | |
|---|---|---|---|
| a. | Ford Motor Company: | Yes x | No __ |
| b. | Johnson & Sons: | Yes __ | No x |
| c. | Beverly Lincoln: | Yes x | No __ |

"2. If nine or more jurors voted Yes to interrogatory Number 1 as to any defendant, with respect to that defendant was any such negligence a proximate cause of injury and damage to the plaintiffs? [Answer: Yes.]

"3. Was there a defect in the 1966 Lincoln Continental automobile involved in the accident of July 19, 1970, existing at the time it was manufactured and sold by defendants Ford and Johnson & Sons?

Yes __ No x"

Defendant Ford asked the court to examine in detail the abstract legal relationship between the terms "defect" and "negligence," but the court said such an examination was not necessary to its decision. The court observed that it was required only to determine if, in the posture in which this case went to the jury, the negative answer to interrogatory number 3 precluded a finding of Ford's negligence liability. The court found that it did not, and concluded that the jury could have found Ford liable even though it answered the other questions negatively. The court observed that a special finding is inconsistent with the general verdict only when, as a matter of law, a special finding when taken by itself would authorize a judgment different than that which a special verdict would permit. The court then observed that every reasonable intendment in favor of the general verdict is to be "indulged." *Hasson, supra,* 138 Cal.Rptr. at 712, 564 P.2d at 864. The court held that general and special verdicts must be beyond possibility of reconcilement under any possible application of the evidence and instructions. If any conclusions could be drawn which would explain the apparent conflict, the jury will be deemed to have drawn them. *Ibid.* (citing *Lowen v. Finnila* (1940) 15 Cal.2d 502, 504, 102 P.2d 520; *Hudgins v. Standard Oil Co.* (1933) 136 Cal.App. 44, 50, 28 P.2d 433). See also *Hogan v. Knoop, supra.* The court further observed that a special verdict can control the general verdict only by its inherent force and clarity. *Hasson, supra,* 138 Cal.Rptr. at 712, 564 P.2d at 864.

The court also noted that defendant Ford made no relevant objection to the form of the special interrogatories prior to their submission, nor did it even suggest that interrogatories numbers 1 and 3 might be so answered as to produce an inconsistent verdict. The court further observed that upon receiving the verdict, the trial court expressed the view that it was "thoroughly consistent," and Ford did not object. This observation has full application to the instant case.

During oral argument to this court, reference was made to *Bilotta, et al. v. Kelley Company, Inc., et al.,* —— N.W.2d —— No. CX–82–186 (Minn. 16 Dec. 1983), which was later revised on 16 March 1984. The parties, at the court's request, later submitted supplemental briefs on what, if any, effect it had on the instant case. While the case is of considerable interest, it is not pertinent to the issues involved here. We note that the Minnesota court observed that the jury was obviously confused because it requested further instructions as to the law pertinent to "defective and unreasonably safe." Only two interrogatories were submitted to the jury with respect to appellant, one on strict products liability, one on negligence. These interrogatories read: "At the time the Model 6280 dockboard left Kelley Company, Inc. was it in a defective and unreasonably dangerous condition?" and "Was Defendant Kelley Company, Inc. negligent?" The court then said that if one concedes that the interrogatories submitted could cover both a design-defect claim and failure-to-warn claim, the fact remains that the court gave an erroneous and incomplete instruction on the design defect claim. Consequently, the court said, it was impossible to determine whether the jury answered the interrogatory relying on the court's instruction with respect to the design defect or the failure to warn.

However, in our instance the special interrogatory asking if the product was defective and unreasonably dangerous was not necessarily irreconcilable with the question asking if the manufacturer was negligent. The jury could well have considered the second question, "Was the Defendant Hysan negligent?" to mean: Did Hysan fail to provide appropriate directions and instructions and did Hysan fail to warn? The record, contrary to Hysan's contention, reflects that Hysan did not give adequate warnings regarding the use of the product.[5] The instant case is readily distinguishable from the *Bilotta* case.

■ Hysan also contended that the trial court erred in refusing to instruct the jury on assumption of risk. Although no specific assumption of risk instruction was given, several of the contributory negligence instructions incorporated the assumption of risk doctrine. Further, the jury was instructed that "Betty Anderson was obligated to act with reasonable care and diligence for her own safety while she was dancing...." The trial court did not err in refusing Hysan's requested instruction regarding assumption of risk.

■ Hysan further argued that the trial court erred in refusing its requested instruction that damages awarded to the plaintiff are not taxable as income. We reaffirm our earlier position that it is improper to instruct the jury that an award of damages is not subject to income tax and that such tax should not be considered in fixing the amount of damages. *Ericksen v. Boyer,* 225 N.W.2d 66, 73 (N.D.1974).

Finally, Hysan argued that the trial court erred in denying its motion for a mistrial after a custodian at the Teamsters Hall and a witness for the Teamsters spoke the word "insurance." During direct examination, the following exchange occurred between counsel for the Teamsters and the witness:

"Q. Did you—or when did you hear about the accident in question?

"A. When, I don't recall but it was when an insurance man called me. I didn't hear about it until six months after it happened.

"Q. I see."

■ An unexpected or inadvertent reference to insurance by a witness in answer to a proper question is ordinarily an exception to the general rule prohibiting improper reference to insurance. *Anderson v. Schreiner,* 94 N.W.2d 294, 300 (N.D.1958); *Smith v. Knutson,* 47 N.W.2d 537, 540 (N.D.1951). In *Neibauer v. Well,* 319 N.W.2d 143, 146 (N.D.1982), however, we

---

5. The directions on the can read: "Floor should be first cleaned and free from dust. Then simply sprinkle the powdered dance floor wax over the floor. If the floor is smooth use it lightly. If it is rough use more. Dancing does the rest."

said that a reference to liability insurance is not less prejudicial simply because it is unexpected and inadvertent. In *Neibauer* we noted that the reference to insurance in *Smith* did not constitute evidentiary testimony and could not have been understood as implying that either party had liability insurance. Those factors, we held, were more important than the inadvertent nature of the reference. *Neibauer, supra,* at 145.

 In the instant case, the reference to insurance was inadvertent, unexpected, and vague. It did not imply that either party had insurance nor was it clear that the witness was referring to a particular party or a special type of insurance. A causal reference to insurance which leaves in doubt what kind of insurance or whose insurance is meant is generally regarded as harmless. *Smith, supra,* at 540. We conclude that the reference was harmless and that the trial court did not err in refusing to grant a mistrial.

The judgment on the jury verdict is affirmed.

ERICKSTAD, C.J., and PEDERSON and VANDE WALLE, JJ., concur.

GIERKE, J., concurs in the result.