Lester RIENTS, et al, Appellants,

v.

INTERNATIONAL HARVESTER
COMPANY, Respondent,

Adam Fron Implement, Defendant.

No. CX–83–1574.

Court of Appeals of Minnesota.

March 14, 1984.

Robert M. Austin, Jerome B. Abrams, Austin, Roth & Assoc., Minneapolis, for appellants.

George W. Soule, Gray, Plant, Mooty, Mooty & Bennett, Minneapolis, for respondent.

Heard, considered, and decided by PARKER, P.J., and WOZNIAK and LANSING, JJ.

## OPINION

WOZNIAK, Judge.

Mr. Rients was injured in a tractor accident. He and his wife sued the manufacturer and the distributor in a products liability suit. The suit was originally filed in United States District Court in Minnesota, but was voluntarily dismissed without prejudice. The Rientses filed a new suit in the LeSueur County District Court. Neither distributor is presently involved in the suit. Alvin Schloesser was dismissed in November of 1980; Adam Fron settled under a Pierringer Release late in 1982. A trial date was set for June 20, 1983, but the defendant brought its motion for summary judgment on May 18, 1983. Arguments were heard by conference call on June 3, 1983. The defendant's motion was granted and the case dismissed on July 15, 1983. The Rientses appeal. We affirm.

## FACTS

In approximately 1972, plaintiff Lester Rients purchased a used International Harvester Farmall "400" tractor from Alvin Schloesser, a used implement dealer in Le-Center, Minnesota. The tractor was equipped with a narrow front wheel base, and was manufactured by International Harvester in 1955.

Mr. Rients used the tractor for approximately 3 years with the narrow wheel base, but decided he would like to equip the tractor with a wide front axle to give it more stability, especially when using a front end loader.

Mr. Rients found the wide front axle he wanted at Adam Fron Hardware and Implement, Inc. in Mapleton, Minnesota. The wide front axle attachment, manufactured by International Harvester, was affixed to a tractor that Fron was planning to junk. Rients paid $150 for the axle and received no operator's manual or other documents with the wide front axle. He installed the front axle on the Farmall "400" himself.

International Harvester designed the wide front axle in 1941, began producing it in 1942, and discontinued it in 1954. The precise date of manufacture of the front axle Mr. Rients installed on his tractor cannot be determined. The front axle was not designed for use with the Farmall "400" tractor, which was manufactured after 1954. The plaintiff introduced evidence that the wide front end could be interchanged with the Farmall 400's regular front end.

Basically, steering input from the operator is transmitted through a center steering arm to the left steering arm, which moves the left front wheel. This motion is also directed to the right steering arm and wheel through a connecting tie rod. The tie rod is connected to the left and right steering arms by a pin and clevis arrangement. The tie rod is placed vertically through holes in both ends of the tie rod clevis and in the steering arm as designed. The tie rod pin is held in position by a cotter key placed through holes in the top of the tie rod clevis and in the tie rod pin.

On April 27, 1977, Mr. Rients drove his tractor on a county road with wide open throttle (20–25 miles per hour). As he went through a downgrade on the road, Mr. Rients saw one of the front axle attachment's tie rod pins, normally held by a cotter key, "jump out." Shortly thereafter, the tractor's front right wheel "went off to the side" and Mr. Rients lost control of the tractor. Approximately 600 feet down the road after losing the tie rod pin, the tractor left the road, overturned, and severed Rients' right leg above the knee.

Mr. Rients does not recall whether there were any cotter keys or other fastening devices through the holes in the tie rod pins

at the time he purchased the subject attachment or at any point before his accident. Mr. Rients understood the significance of the holes through the tie rod pins, but does not recall if there was ever anything in the holes.

The record shows many modifications of the tractor and the front axle attachment were made before the accident.

The cotter key was missing from the tie rod pin that allegedly came out in the accident, and had been absent from the tie rod pin for some time before the accident.

The steering gear arm had been broken and poorly welded before the accident. The steering gear arm had been modified by removal of a piece with a cutting torch.

The rock box installed on the tractor was made by Rients and had contact with and exerted pressure on the steering gear arm, abrading the grease fitting on the steering arm.

The tie rod was twisted and bent.

Both left and right steering arms were bent.

The right steering arm attachment to the steering spindle was welded, rather than held by the clamp in the steering arm. The tie rod pin that remained in the axle was apparently secured in place at the time of the accident by a bent nail. There were no cotter pins securing the front axle clamp pins.

The left axle adapter brace connecting the attachment to the tractor frame was missing.

The brakes were worn.

Lee Sapetta, the plaintiffs' expert, acknowledged that the front axle attachment had changed in several respects since its manufacture, including the following: the left steering arm was bent downward; the tie rod connecting pins were out of round; the holes in the tie rod clevises were worn so that they were oval rather than round; the grease fitting on the center steering arm was occluded by wear and there was a bend in the tie rod so that it is no longer completely or totally straight.

It further appeared by the record that, under normal circumstances, the tractor would have been able to stop in 67 feet.

## ISSUES

1. Can the plaintiffs show that the alleged defect caused the accident?
2. Can the plaintiffs show that the product reached the plaintiffs in substantially the same condition in which it was sold and delivered by the manufacturer?
3. Can the plaintiffs show that the injury was not caused by any voluntary, unusual or abnormal handling by the plaintiff?

## ANALYSIS

Minnesota allows summary judgments under Rule 56 of its Rules of Civil Procedure. Summary judgment is proper when:

The pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that either party is entitled to judgment as a matter of law.

Minn.R.Civ.P. 56.03. The sole issue when examining a summary judgment motion is whether an issue of fact exists. *Bennett v. Storz Broadcasting Co.*, 270 Minn. 525, 531, 134 N.W.2d 892, 897 (1965). The moving party has the burden of showing that no issue of fact remains. *Nord v. Herreid*, 305 N.W.2d 337 (Minn.1981). This court is concerned only with *genuine* issues of material fact. As noted by the Fifth Circuit:

In passing on motion for summary judgment, even where the underlying facts are undisputed, it is text book law that the court must indulge every *reasonable* inference from those facts in favor of the party opposing the motion. Insofar as any weighing of inferences from given facts is permissible, *the task of the court is not to weigh these against each other but rather to cull the universe of possible inferences from the facts established by weighing each against the abstract*

*standard of reasonableness, casting aside those which do not meet it and focusing solely on those which do.* If a frog be found in the party punch bowl, the presence of a mischievious guest—but not the occurrence of spontaneous generation—may reasonably be inferred. *American Tel. & Tel. Co. v. Delta Communications Corp.,* 590 F.2d 100 (5th Cir. 1979), *cert. denied,* 444 U.S. 926, 100 S.Ct. 265, 62 L.Ed.2d 182 (1980) (emphasis added).

1. In any theory of products liability, the plaintiff must show a causal link between the alleged defect and the injury. *Bilotta v. Kelly Co., Inc.,* — N.W.2d — at n. 3 (Minn. March 16, 1984) (strict liability); *Hudson v. Snyder Body, Inc.,* 326 N.W.2d 149 (Minn.1982) (negligence); *Farr v. Armstrong Rubber Co.,* 288 Minn. 83, 179 N.W.2d 64 (1970) (breach of warranty). Here the plaintiff has introduced an expert's opinion that this axle was defective because a cotter key was used in the design and that other allegedly safer designs existed. It is uncontroverted, however, that numerous modifications and repairs had been made on the axle. The brakes were worn. The steering gear arm, previously modified by removal of a piece with a cutting torch, broke at a weld. The grease fitting on the steering arm, abraded by the added rock box, was not accessible or functional. The tie rods and steering knuckles were bent. Considering this uncontroverted evidence, even if a jury found a design defect, it would be sheer speculation for a jury to find that the design defect caused the accident rather than any of these other possible causes.

The Rientses sued International Harvester and others for negligence, breach of warranty, and strict products liability. He claims International Harvester's design was defective, the defect giving rise to the injury. Defendant claims that the cause of the injury was a worn-out cotter key and that the manufacturer has no liability for an old, worn-out part; that a manufacturer should not be liable under products liability when the plaintiff cannot prove that the product reached plaintiff without substantial change in the condition in which it was originally sold, and that the manufacturer should not be liable for allegedly defective design when the product has been substantially changed by wear and tear, misuse, faulty repairs, and lack of repairs and maintenance. It is undisputed that the hole in the tie rod pin intended for the cotter key was clogged with debris and even plaintiff's expert witness confirms defendant's finding that the cotter key had not been in place through the subject tie rod pin before the accident. As stated in a Louisiana case:

> In this case, it is firmly established that persons ordinarily dealing with agricultural equipment, whether dealers or users, are or should be well aware that cotter keys need inspecting and replacing periodically.

*Foster v. Marshall,* 341 So.2d 1354, 1362 (La.App.1977).

The burden of proving that the product reached plaintiff without substantial change in the condition in which it was originally sold by the manufacturer simply cannot be met by the plaintiffs. They could not prove that the wide front axle attachment had a cotter key in the subject tie rod pin as intended by the International Harvester design and as initially sold by International Harvester when it reached Lester Rients in 1975, at least 20 years after its manufacture.

2. The Minnesota Supreme Court has adopted Section 402A of the Restatement (Second) of Torts. *McCormack v. Hankscraft Co.,* 278 Minn. 322, 338, 154 N.W.2d 488, 499 (1967). Under the Restatement, a plaintiff claiming strict liability must show not only a defect causing injury, but also that the product:

> is expected to and does reach the user or consumer without substantial change in the condition in which it was sold.

Restatement (Second) of Torts § 402A (1966); *see also,* JIG II, No. 118G, *found in* 4 Hetland & Adamson, Minnesota Practice at 94 (1974). The appellants, the Rientses, agree this standard applies.

■ Here it is clear that plaintiffs cannot prove that an important aspect of the design of the subject attachment—cotter key securing the tie rod pins in place—was present when Rients purchased the attachment. By his own admission, Rients does not know whether a cotter key or any other fastening device was in the tie rod pin on either side of the attachment when he purchased it. As a matter of fact, Mr. Rients does not recall if there was *ever* anything through the hole in the tie rod pin that allegedly came out at the onset of the accident. Although he knew the significance of the hole through the tie rod pin and claims he regularly greased the tie rod steering arm joint just an inch or two from the hole in the tie rod pin, Rients does not know whether a cotter pin was ever present in the tie rod pin during his ownership of the attachment.

■ 3. Additionally, the plaintiff must show that the "injury was not caused by any voluntary, unusual or abnormal handling by the plaintiff." *Magnuson v. Rupp Mfg., Inc.*, 285 Minn. 32, 40, 171 N.W.2d 201, 206 (1969); *see also Waite v. American Creosote Works*, 295 Minn. 288, 204 N.W.2d 410 (1973). To meet this requirement, the plaintiff must prove:

> that he made proper use of the product, that he was in the exercise of due care for his own safety, that he was not aware of the defect and that he did not mishandle the product.

Case Comment, *Products Liability: The Victim's Conduct as a Bar to Recovery— The Minnesota Supreme Court Reaffirms the Magnuson "Limiting Factors,"* 1 Wm. Mitchell L.Rev. 207, 209 (1974). Here, it is uncontroverted that the plaintiff's tractor and axle attachment were substantially altered. The tie rods were bent; a rock box mounted; the center steering arm fractured and welded; the left steering arm bent; the design of the front end substantially damaged. Given the condition of the tractor and axle attachment, the Rientses could not prove that Mr. Rients had not abnormally modified the tractor.

The Rientses cannot show that the front axle attachment reached them without substantial change in the condition in which it was sold, nor can they prove that the injury was not caused by Mr. Rients' abnormal modification of the tractor and axle attachment. Because the Rientses cannot show material issues of fact concerning basic elements of their cause of action, the summary judgment was proper.

## DECISION

■ The plaintiffs cannot prove basic elements of their products liability case. Assuming that they can show a design defect, they cannot show if the defect caused the accident, or one of the myriad of other possible causes. Considering the number of repairs and modifications to the front axle attachment, the plaintiffs cannot prove the axle reached them in substantially the same condition in which it was sold and delivered by International Harvester. Finally, the plaintiffs cannot show that they did not abnormally modify the axle. Since the Rientses cannot show material issues of fact concerning basic elements of their cause of action, the summary judgment was proper.

Appellants are awarded $250.00 in attorney's fees for respondent's failure to appear at the first scheduled hearing.

Affirmed.