**Natividad (Marie) SEEFELD, a/k/a Marie Robertson, Plaintiff,**

v.

**CROWN, CORK & SEAL COMPANY, INC., Defendant and Third–Party Plaintiff,**

v.

**LaMAUR, INC., Third–Party Defendant.**

**No. Civ. 3–90–502.**

United States District Court, D. Minnesota, Third Division.

Dec. 31, 1991.

**462**

Gary L. Manka and Richard S. Virnig, Katz & Manka, Ltd., Minneapolis, Minn., for plaintiff.

Mark N. Stageberg and Ehrich L. Koch, Lommen, Nelson, Cole & Stageberg, P.A., Minneapolis, Minn., for defendant and third-party plaintiff.

## ORDER

DEVITT, District Judge.

## INTRODUCTION

In this products liability, diversity action, arising out of injuries caused by an exploding aerosol can, defendant now moves the Court for partial summary judgment asking the Court to find as a matter of law that defendant did not defectively design or manufacture the aerosol can causing the injury and did not have a duty to warn plaintiff of any of the dangers inherent in the can. Jurisdiction is established. 28 U.S.C. § 1332(a).

Defendant does not move for summary judgment on Count One or Two in the complaint, (negligence and breach of implied warranty of merchantability). Plaintiff agrees to dismiss the design defect product liability claim.

## FACTS

Plaintiff, Natividad (Marie) Seefeld, also known as Marie Robertson ("Seefeld"), was an employee of LaMaur, Inc. ("LaMaur"). Seefeld worked as a line operator in LaMaur's plant which produced Style hair spray. LaMaur purchases empty aerosol cans from defendant Crown, Cork & Seal Co. ("Crown") and then fills those cans with its product. After filling the cans, LaMaur pressurizes them and inserts the nozzle or spray apparatus.

Finally, in accordance with the Department of Transportation's requirements, LaMaur sends the cans through a hot water bath test. The purpose of the test is to separate leaking cans from the good ones and to keep the leakers from reaching the consumer. Line operators are also instructed to remove doming or bulging cans as they indicate a weakness in the metal and pose a risk of harm. Bulging cans are ones on which the bottom of the can pushes out. Doming cans are ones which elongate at the top by the spray nozzle.

Seefeld's job as a line operator was to remove cans which failed the hot water

test. Seefeld was severely burned on the job when one of the pressurized aerosol cans failed along the sideseam and exploded as she attempted to remove the can from the hot water bath.

Crown, through its quality control director, admitted that if the normal failure sequence of an aerosol can does not occur, but instead, the sideseam fails, the failure is due to a cold weld. A cold weld is an insufficiently fused or bonded weld.

### DISCUSSION

Crown moves the Court for summary judgment, asking the Court to find as a matter of law that Crown did not defectively design or manufacture the aerosol can causing the injury and did not have a duty to warn plaintiff of any of the dangers inherent in the can.

Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). When the burden of proof will be on the non-moving party at trial, the moving party can move the Court for summary judgment and rely on the pleadings and the allegation that the non-moving party failed to establish an essential element in its case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). The non-moving party must then go beyond the pleadings and set forth specific facts showing there is a genuine issue for trial. *Id.* Because Seefeld has gone beyond the pleadings and set forth specific facts indicating there are genuine issues of fact for trial, the Court denies Crown's motion for summary judgment.

### 1. *Strict Liability Design Defect Claim*

Because the parties have agreed to dismiss the claim that Crown defectively designed the aerosol cans purchased by LaMaur, the Court will not address this matter.

### 2. *Strict Liability Manufacturing Defect Claim*

Two recent Minnesota Supreme Court cases have set forth the elements of strict liability. In *Hudson v. Snyder Body, Inc.*, the court held that the plaintiff must establish that (1) the plaintiff was injured; (2) the injury was caused by the defendant's product; (3) the injury occurred because defendant's product was defective; (4) the defect was present in the product when it was sold by defendant. *Hudson v. Snyder Body, Inc.*, 326 N.W.2d 149 (Minn.1982) (citation omitted).

More recently in *Bilotta v. Kelley*, the state supreme court held that the plaintiff in a strict liability case must show that (1) the defendant's product was in a defective condition, unreasonably dangerous for its intended use; (2) the defect existed when the product left the defendant's control; and (3) the defect was the proximate cause of the injuries sustained. *Bilotta v. Kelley*, 346 N.W.2d 616 (Minn.1984) (citation omitted).

In both *Hudson* and *Bilotta*, the question of whether the plaintiff met the above requirements went to the jury. Whether Seefeld has met the requirements, is likewise, a question of fact for the jury.

Defendant asserts that plaintiff Seefeld must meet additional requirements set forth by the Minnesota Court of Appeals. *Rients v. Int'l Harvester Co.*, 346 N.W.2d 359, 362–63. (Minn.App.1984) However, Crown's reliance on *Rients* appears to be misplaced because plaintiffs' strict liability claim in *Rients* was based on a design defect theory of liability, rather than a manufacturing defect theory like the claim now before the Court. Further, the *Rients* case differs significantly, as a factual matter, from the case at hand. In *Rients*, the plaintiff purchased the allegedly defective product in a used condition in 1972. The accident did not occur until 1977 when the product was at least 22 years old. In the interim the plaintiff made major modifications and repairs to the very part of the tractor that he later claimed was defective. In the instant case plaintiff was injured by the explosion of a new aerosal can, to

**464**

which only minor, anticipated modifications had been made.

### 3. *Strict Liability Failure to Warn Defect Claim*

■ Failure to warn is a separate cause of action and may be based on a theory of either strict liability or negligence. *Westbrock v. Marshalltown Mfg. Co.*, 473 N.W.2d 352 (Minn.App.1991) (citing *Peppin v. W.H. Brady Co.*, 372 N.W.2d 369, 374 (Minn.App.1985). "The distinction between strict liability and negligence in ... failure to warn cases is that in strict liability, knowledge of the condition of the product and the risks involved in that condition will be imputed to the manufacturer, whereas in negligence these elements must be proven." *Bilotta v. Kelley Co., Inc.*, 346 N.W.2d 616, 622 (Minn.1984), appeal after remand, 358 N.W.2d 679 (Minn.App.1984), rev. denied.

Because the failure to warn claim at issue here is based on strict liability and not negligence, knowledge of the condition of the aerosol can and the risks involved in that condition will be imputed to Crown. The alleged condition of the can is a cold-welded sideseam. Assuming Seefeld is able to prove the can had a cold-welded sideseam, the Court imputes knowledge of that defective sideseam and the risks involved in such a defect to Crown.

■ The following three issues must be decided in a failure to warn claim: (1) whether there exists a duty to warn about the risk in question; (2) whether the warning given was inadequate; and (3) whether the lack of a warning was a cause of plaintiff's injuries. *Balder v. Haley*, 399 N.W.2d 77, 81 (Minn.1987). The question of whether a legal duty to warn exists is a question of law for the court to decide. *Id.; Germann v. F.L. Smithe Mach. Co.*, 395 N.W.2d 922, 924 (Minn.1986). Whether a duty to warn exists is dependent on the resulting injury's foreseeability. *Westbrock v. Marshalltown Mfg. Co.*, 473

N.W.2d at 358 (citing *Balder v. Haley*, 399 N.W.2d at 81.

■ In deciding whether Crown had a duty to warn of the defective condition of the can and the risks involved therein, the Court must determine whether the plaintiff's injuries were a direct consequence and the type of occurrence that was or should have been reasonably foreseeable, given the defective condition of the can. *Germann v. F.L. Smithe Mach. Co.*, 395 N.W.2d 922 (Minn.1986).

The explosion of the can and the resulting injuries are the direct result of the cold-welded sideseam and are the types of occurences which were or should have been reasonably foreseeable. In depositions, Crown's quality control director, Charles Morris, indicated that a cold weld will cause a can to fail along the sideseam, without first proceeding through the normal failure sequence.[1] Therefore, the sideseam failure is a direct result of the cold weld and was the type of occurence which was reasonably foreseeable. The explosion of a pressurized aerosal can is a reasonably forseeable result of the can following an improper failure sequence. Finally, plaintiff's injuries resulted directly from the explosion, and are also the type of occurence which is reasonably foreseeable. So long as plaintiff Seefeld is able to show that the can failed because of the cold weld and the failure caused plaintiff's injuries, the Court will impute knowledge of the defect to Crown and find Crown had a duty to warn of the defect and risks involved therein.

### ORDER

Based upon the file, briefs and arguments, IT IS ORDERED: Defendant's motion for partial summary judgment is DENIED.

1. The normal failure sequence for a non-defective can is as follows: the top or dome of the can should first elongate and then the bottom should bulge out. Finally, one of the double seams which is attached to the side wall and either the dome or the bottom, should let loose and cause the can to fail.